**Lansing, Michigan**

# Opinion

Chief Justice:        Justices:

Robert P. Young, Jr.    Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

FILED JUNE 8, 2012

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

LINCOLN ANDERSON WATKINS,

      Defendant-Appellant.

No. 142031

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

RICHARD KENNETH PULLEN,

      Defendant-Appellee.

No. 142751

---

BEFORE THE ENTIRE BENCH

ZAHRA, J.

These consolidated cases involve MCL 768.27a(1), which provides in relevant part that "in a criminal case in which the defendant is accused of committing a listed

offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant."[1]  We hold that MCL 768.27a irreconcilably conflicts with MRE 404(b), which bars the admission of other-acts evidence for the purpose of showing a defendant's propensity to commit similar acts, and that the statute prevails over the court rule because it does not impermissibly infringe on this Court's authority regarding rules of practice and procedure under Const 1963, art 6, § 5.  We also hold that evidence admissible under MCL 768.27a remains subject to MRE 403, which provides that a court may exclude relevant evidence if the danger of unfair prejudice, among other considerations, outweighs the evidence's probative value.[2]  In applying the balancing test in MRE 403 to evidence admissible under MCL 768.27a, however, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect.  Accordingly, we affirm the judgment of the Court of Appeals in *People v Watkins*, Docket No. 142031, vacate the judgments of the lower courts in *People v Pullen*, Docket No. 142751, and remand the latter case to the trial court for further proceedings consistent with this opinion.

---

[1] "'Listed offense' means that term as defined in section 2 of the sex offenders registration act, 1994 PA 295, MCL 28.722."  MCL 768.27a(2)(a).

[2] Given this conclusion, we need not address whether, if evidence admissible under MCL 768.27a were *not* subject to MRE 403, the statute would violate a defendant's due-process right to a fair trial or interfere with the judicial power to ensure that a criminal defendant receives a fair trial.

# I. FACTS AND PROCEDURAL HISTORY

## A. DOCKET NO. 142031

In Docket No. 142031, defendant, Lincoln Anderson Watkins, appeals by leave granted the judgment of the Court of Appeals affirming his convictions and sentences. Watkins was charged with five counts of first-degree criminal sexual conduct (CSC-I)[3] and one count of second-degree criminal sexual conduct (CSC-II)[4] for allegedly molesting a 12-year-old girl.

The Court of Appeals summarized the allegations of sexual abuse that the prosecution presented at the pretrial stage:

> The victim in the instant case was a 12-year-old girl whose family lived next door to defendant and whose father was defendant's business partner. The victim had known defendant and his wife since she was two years old and regarded defendant as a father figure. The victim babysat defendant's youngest child. In May 2006, defendant showed her a picture of his penis being inserted into a vagina. The next day, while she was playing video games with defendant's daughter in his bedroom, he touched her breasts. The day after that incident the victim was again babysitting at defendant's house when defendant sent his daughter into another room, unbuttoned the victim's pants, and told her to pull them down and get on his bed. She stood up and pulled down her pants, and when she bent over, defendant inserted his penis into her vagina from behind repeatedly until he ejaculated. She and defendant engaged in intercourse again in his bedroom the following day while she was babysitting his daughter. The victim claimed that she and defendant engaged in intercourse yet another time in defendant's bedroom and one time in his living room. The victim alleged that, about two weeks later, defendant asked her if she wanted to have sex, but she declined because she was menstruating. The victim claimed that defendant nevertheless instructed her to stand up and lift her skirt, and, when she complied, he inserted his penis into her vagina. The victim

---

[3] MCL 750.520b(1)(a) (involving a person under the age of 13).

[4] MCL 750.520c(1)(a) (involving a person under the age of 13).

3

asserted that she worried that defendant might force her to have sexual intercourse in the future, so she told her mother that she had been having a sexual relationship with defendant.[5]

Before trial, the prosecution filed a motion to introduce evidence of other acts to establish a common plan or scheme, as permitted under MRE 404(b).[6] In particular, the prosecution sought to have a witness, EW, testify that Watkins had also engaged in vaginal-penile penetration with her.[7] Like the victim in the instant action, EW was a minor at the time, and she had a close relationship with Watkins's wife. The trial court granted the motion over Watkins's objection. The following is a summary of EW's testimony offered at defendant's first trial:

> At the first trial, [EW] testified that defendant's wife is her first cousin and that she [EW] met defendant when she was 14 years old. [EW] loved defendant like a brother and often babysat for defendant's children. On one occasion when she was 15 years old, she visited defendant and his wife for the weekend and helped them with their infant. While alone with [EW], defendant commented on her sexual attractiveness, took her hand, and began leading her up the stairs to his bedroom on the second floor. [EW] was reluctant to go upstairs, so defendant pulled down her pants and inserted his penis into her vagina while they were still in the hallway. After eventually moving to defendant's bedroom, they continued having

---

[5] *People v Watkins*, 277 Mich App 358, 360; 745 NW2d 149 (2007).

[6] MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

[7] The prosecution also sought to have a second witness testify regarding other-acts evidence. That testimony is not at issue in this appeal.

intercourse until defendant ejaculated. [EW] stated that the episode began a two-year sexual relationship, during which they had sexual encounters about 15 different times at defendant's home, her mother's home, and in empty houses where defendant was painting. [EW] explained that defendant included her in his family; they went to an amusement park together, went out to eat together, and watched movies together.[8]

Following the close of trial, the jury commenced deliberations but was unable to reach a verdict. Consequently, the trial court declared a mistrial.

At the opening of his second trial, Watkins moved for the trial court to reconsider its ruling on the other-acts evidence under MRE 404(b). This time, the trial court granted the motion. It reasoned that the other acts described by EW were too dissimilar from the charged acts to justify their use to show a common plan or scheme. The prosecution applied for leave to file an interlocutory appeal while the case proceeded to trial for the second time.

The trial court declared a second mistrial when it learned that a juror had overheard a supervisor in the prosecutor's office comment about the court's exclusion of the other-acts evidence while riding in a courthouse elevator. Meanwhile, the Court of Appeals peremptorily reversed the trial court's decision to exclude EW's testimony and remanded the case to the trial court with instructions for it to determine which aspects of EW's proposed testimony were admissible under MCL 768.27a as evidence of criminal sexual conduct against a minor. Subsequently, this Court vacated the Court of Appeals' order and remanded the case to the Court of Appeals with directions to consider whether

---

[8] *Watkins*, 277 Mich App at 361.

MCL 768.27a conflicted with MRE 404(b) and, if so, whether the statute prevailed over the rule of evidence.[9]

In a published opinion, the Court of Appeals held that MCL 768.27a conflicted with MRE 404(b) and that the statute prevailed over the rule of evidence.[10]  Accordingly, it remanded the case to the trial court to determine under MCL 768.27a which aspects of EW's testimony related to the commission of a criminal sexual act against a minor.[11] This Court granted leave to appeal,[12] but later vacated that order after determining that leave had been improvidently granted.[13]  Watkins preserved all his previous constitutional challenges as the case proceeded to trial for the third time.

At the third trial, the victim, then 15 years old, testified that she had known Watkins all her life, having lived next door to him and having occasionally baby-sat one of his children.  She also stated that she was good friends with Watkins's wife, whom she considered her godmother.  She considered Watkins her boyfriend.  According to the victim, when she was 12 years old, Watkins approached her at a Memorial Day gathering and showed her sexually explicit images that were on his cell phone.  She claimed that Watkins touched her breasts the next time she baby-sat and penetrated her vaginally the day after that.  This conduct allegedly occurred consensually for the next couple of

---

[9] *People v Watkins*, 479 Mich 853 (2007).

[10] *Watkins*, 277 Mich App at 365.

[11] *Id.*

[12] *People v Watkins*, 480 Mich 1167 (2008).

[13] *People v Watkins*, 482 Mich 1114 (2008).

6

weeks. Sometime thereafter, when the victim arrived to baby-sit, she declined Watkins's request to engage in sexual activity because she was menstruating. She testified that Watkins's insistence disturbed her and she thought he might rape her. She told her mother what had happened. Although the victim did not want to get Watkins in trouble, she agreed to speak with the police.

The trial court allowed EW to testify regarding other-acts evidence under MCL 768.27a. According to EW, about 10 years earlier, when she was 15 years old, she had often baby-sat Watkins's oldest child. She testified that, during one visit, Watkins led her upstairs by the hand. He allegedly began kissing her, and their interactions culminated in sexual penetration. According to EW, their sexual relationship lasted a couple of years.

Watkins did not take the stand or call any witnesses. Defense counsel argued that the witnesses lacked credibility because their statements were inconsistent and uncorroborated. Ultimately, the jury returned a verdict finding Watkins guilty of four counts of CSC-I and one count of CSC-II, but not guilty of the remaining count of CSC-I.

Watkins raised several arguments on appeal, including that MCL 768.27a conflicts with MRE 404(b) and the rule of evidence prevails over the statute; that EW's testimony should have been excluded under MRE 403, which the trial court failed to consider; and that the trial court failed to hold a hearing to determine the proper scope of EW's testimony.

The Court of Appeals affirmed in an unpublished opinion per curiam.[14] While agreeing with Watkins that MCL 768.27a conflicts with MRE 404(b), it rejected the

---

[14] *People v Watkins*, unpublished opinion per curiam of the Court of Appeals, issued October 5, 2010 (Docket No. 291841).

7

argument that the rule of evidence takes priority over the statute. Instead, it observed that a previous panel had already held that MCL 768.27a, as a substantive rule of evidence, did not interfere with the Supreme Court's authority to regulate court administration and, therefore, the statute takes priority over the rule of evidence.[15] With regard to MRE 403, it held that evidence admissible under MCL 768.27a remains subject to MRE 403.[16] Although acknowledging that the trial court had failed to apply MRE 403, the Court of Appeals reasoned that it had already decided the issue of admissibility when it directed the trial court to determine which aspects of EW's testimony fit the requirements of MCL 768.27a and stated that those aspects were admissible.[17] The Court of Appeals concluded that EW's testimony would have been admissible even had the trial court considered MRE 403:

> The evidence that defendant had assaulted another minor . . . was relevant because it tended to show that it was more probable than not that the victim was telling the truth. The similarity of the relationships (E.W. was defendant's wife's cousin while the victim thought of his wife as a godmother) and defendant's modus operandi (taking advantage of minors who had a close relationship with his wife and were present in his home to baby sit) also made the likelihood of defendant's behavior toward the victim more probable. Moreover, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Whether the victim was telling the truth had significant probative value in deciding whether defendant should be convicted of the crimes for which he was charged. Further, defense counsel was able to effectively cross-examine E.W. regarding the fact that she thought of defendant as her boyfriend and

---

[15] *Id.* at 4, citing *People v Pattison*, 276 Mich App 613, 619-620; 741 NW2d 558 (2007), and *Watkins*, 277 Mich App at 364.

[16] *Watkins*, unpub op at 5.

[17] *Id.*

8

> maintained contact with him after their relationship ended, even expressing a desire to have his child. Finally, the court instructed the jury on how to properly use the other acts evidence[.][18]

Thus, the Court of Appeals concluded that the testimony was relevant and not more prejudicial than probative and that any error by the trial court was harmless.[19]

Finally, the Court of Appeals concluded that the trial court had abused its discretion when it failed to determine which aspects of EW's testimony met the requirements of MCL 768.27a.[20] EW's testimony regarding sexual intercourse with Watkins that occurred from the time she was 16 years old and after was not admissible under the statute.[21] Nonetheless, as the Court of Appeals explained, the only incident for which EW provided specific details occurred when she was 15 years old.[22] Moreover, the testimony regarding events that occurred from the time EW was 16 years old and after was helpful to the defense because it highlighted the fact that EW deeply cared for Watkins.[23] Accordingly, it held that the error in admitting all of EW's testimony "was

---

[18] *Id.*

[19] *Id.* at 6.

[20] *Id.* at 6-7.

[21] MCL 750.520d(1)(a) provides: "A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person . . . [who] is at least 13 years of age and under 16 years of age." As the Court of Appeals explained, "after E.W. turned 16 years old, the sexual acts described would no longer constitute a crime" under this provision and thus "would not constitute a listed offense admissible as other acts evidence under MCL 768.27a." *Watkins*, unpub op at 7.

[22] *Id.*

[23] *Id.* at 7-8.

9

not inconsistent with substantial justice."[24]  We granted leave, instructing the parties to address

> (1) whether MCL 768.27a conflicts with MRE 404(b) and, if it does, (2) whether the statute prevails over the court rule . . . , (3) whether the omission of any reference to MRE 403 in MCL 768.27a (as compared to MCL 768.27b(1)), while mandating that evidence of other offenses "is admissible and may be considered for its bearing on any matter to which it is relevant," would violate a defendant's due process right to a fair trial, and (4) whether MCL 768.27a interferes with the judicial power to ensure that a criminal defendant receives a fair trial, a power exclusively vested in the courts of this state under Const 1963, art 6, § 1.[25]

### B.  DOCKET NO. 142751

In Docket No. 142751, the prosecution appeals by leave granted the judgment of the Court of Appeals affirming the trial court's opinion and order granting the motion in limine filed by defendant, Richard Kenneth Pullen.  Pullen was charged with two counts of CSC-II[26] and one count of aggravated indecent exposure[27] for acts allegedly committed against his then 12-year-old granddaughter.  At the preliminary examination, the victim testified that Pullen had touched her breasts with his hands under her clothes multiple times and that the touching started when she was five or six years old.  She also claimed that Pullen touched her "crotch" under her clothes on a weekly basis.  With regard to Pullen's alleged indecent exposure, the victim testified that, when she was 11 or

---

[24] *Id*. at 8.

[25] *People v Watkins*, 489 Mich 863 (2011).

[26] MCL 750.520c(1)(a) (involving a person under the age of 13).

[27] MCL 750.335a(2)(b).

10

12 years old, she saw Pullen touching his penis in the next room while on the computer and, at the time, Pullen knew she could see him masturbating.

Before trial, the prosecution filed a notice of intent to introduce under MCL 768.27a other acts of sexual misconduct against a minor. Specifically, the prosecution sought to introduce a 1989 police report containing allegations that Pullen had sexually abused his then 16-year-old daughter. In the report, Pullen's daughter alleged multiple instances of digital penetration in which he "checked if [she] was still a virgin." In addition, the report contained allegations that defendant had frequently touched his daughter's breasts, buttocks, and genital area while wrestling and massaging her back, had repeatedly walked in on her while she was undressed, and had arranged to expose himself to her when he was bathing. Although Pullen had apparently admitted engaging in some of the conduct alleged in the report, including the digital penetration, criminal charges were never filed.

In response to the notice of intent to introduce the 1989 police report, Pullen filed a motion in limine to bar the evidence as unduly prejudicial. The trial court granted Pullen's motion and excluded the evidence. After concluding that it "must perform the balancing test set forth in MRE 403 before admitting evidence under MCL 768.27a," the trial court ruled that the 1989 police report failed to survive that balancing:

> [I]t is the opinion of this Court that the prejudicial impact of the evidence proffered by the People substantially outweighs the probative value because it involves more serious facts than those in the case at bar. [Pullen] is charged with having sexual contact with his granddaughter, as well as exposing himself to his granddaughter. The police report from 1989 sets forth facts of a long pattern of sexual abuse by [Pullen] against his daughter, including multiple digital penetrations . . . . According to the police report, [Pullen] admitted to police that he had perpetrated these acts

11

upon his daughter. Should this evidence be presented to the jury, it is highly probable that the jury would not be able to separate the two cases and would likely decide the case based on emotional impact rather than logical reasons. Thus, this evidence does not survive the balancing test of MRE 403 and is not admissible.

The Court also finds that it would be fundamentally unfair and a violation of due process to force [Pullen] to defend accusations from over 20 years ago for which charges were never filed. [Pullen] is in an untenable position to try to disprove more serious and greatly dated charges. It is unlikely that he would be able to do so, and to require him to do so would be manifestly unjust.

Following the ruling, the trial court agreed to stay the trial court proceedings to allow the prosecution to pursue an appeal. The Court of Appeals granted the prosecution's interlocutory application for leave to appeal and affirmed the trial court's ruling in an unpublished opinion per curiam.[28] It concluded that MRE 403 applies to evidence admissible under MCL 768.27a and held that the trial court did not abuse its discretion by excluding the evidence:

Even given the fact that the evidence is relevant because the past conduct also involves a family member, it is highly likely that the jury would convict defendant solely based on his past conduct out of inflamed passion, anger or shock. In addition, because the prior conduct did not result in a conviction or even in the filing of charges, the trial court correctly observed that the necessary presentation of this evidence concerning the earlier alleged conduct would not only overshadow the question of defendant's guilt that is directly at issue in the instant case, it would be virtually impossible for defendant to defend himself against the earlier unproven allegations.[29]

---

[28] *People v Pullen*, unpublished opinion per curiam of the Court of Appeals, issued February 15, 2011 (Docket No. 298138).

[29] *Id.* at 4.

12

The prosecution applied for leave to appeal in this Court. We granted leave, instructing the parties to address

> (1) whether the omission of any reference to MRE 403 in MCL 768.27a (as compared to MCL 768.27b(1)), while mandating that evidence of other offenses "is admissible and may be considered for its bearing on any matter to which it is relevant," would violate a defendant's due process right to a fair trial and (2) whether the Court should rule that evidence of other offenses described in MCL 768.27a is admissible only if it is not otherwise excluded under MRE 403.[30]

## II. STANDARD OF REVIEW

Constitutional questions and issues of statutory interpretation are questions of law, which this Court reviews de novo.[31] In addition, we review for an abuse of discretion a trial court's decision to exclude evidence.[32] A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes.[33]

## III. ANALYSIS

### A. MCL 768.27a AND MRE 404(b) CONFLICT

Addressing whether MCL 768.27a prevails over MRE 404(b) requires the initial determination whether the statute and court rule irreconcilably conflict.[34] It is only in cases of irreconcilable conflict that we must determine whether the Legislature has

---

[30] *People v Pullen*, 489 Mich 864 (2011).

[31] *People v McCuller*, 479 Mich 672, 681; 739 NW2d 563 (2007); *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003).

[32] *People v Blackston*, 481 Mich 451, 480; 751 NW2d 408 (2008).

[33] *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

[34] *McDougall v Schanz*, 461 Mich 15, 24; 597 NW2d 148 (1999).

13

enacted a statute that improperly supplants the Court's exclusive authority under Const 1963, art 6, § 5 to promulgate rules regarding the practice and procedure of the courts.[35] "We do not lightly presume that the Legislature intended a conflict, calling into question this Court's authority to control practice and procedure in the courts."[36]

When construing a statute, whether to determine the existence of a conflict or otherwise, our primary objective remains the same: to ascertain and give effect to the Legislature's intent.[37] We begin our analysis with the text. If the statutory language is plain and unambiguous, courts must "enforce the statute as written and follow its plain meaning, giving effect to the words used by the Legislature."[38] We are also mindful of the need to read statutory provisions as a whole, focusing on not only the individual words and phrases but also the placement of those words and phrases in the context of the broader legislative scheme.[39] The same principles govern the construction of court rules.[40]

In this case, we have little trouble concluding that MCL 768.27a and MRE 404(b) irreconcilably conflict. MRE 404(b)(1) provides:

---

[35] *Id.*

[36] *People v Dobben*, 440 Mich 679, 697 n 22; 488 NW2d 726 (1992).

[37] *People v Phillips*, 469 Mich 390, 395; 666 NW2d 657 (2003).

[38] *People v Barbee*, 470 Mich 283, 286; 681 NW2d 348 (2004).

[39] *Herman v Berrien Co*, 481 Mich 352, 366; 750 NW2d 570 (2008).

[40] *Grievance Administrator v Underwood*, 462 Mich 188, 193-194; 612 NW2d 116 (2000).

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Thus, MRE 404(b) requires the exclusion of other acts evidence if its only relevance is to show the defendant's character or propensity to commit the charged offense.[41] "Underlying the rule is the fear that a jury will convict the defendant inferentially on the basis of his bad character rather than because he is guilty beyond a reasonable doubt of the crime charged."[42] Preventing the jury from drawing this inference recognizes the risk that propensity evidence might "'weigh too much with the jury and . . . so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.'"[43]

By contrast, MCL 768.27a provides:

(1) Notwithstanding [MCL 768.27],[44] in a criminal case in which the defendant is accused of committing a listed offense against a minor,

---

[41] *People v Knox*, 469 Mich 502, 510; 674 NW2d 366 (2004).

[42] *People v Crawford*, 458 Mich 376, 384; 582 NW2d 785 (1998).

[43] *Old Chief v United States*, 519 US 172, 181; 117 S Ct 644; 136 L Ed 2d 574 (1997), quoting *Michelson v United States*, 335 US 469, 476; 69 S Ct 213; 93 L Ed 168 (1948).

[44] MCL 768.27 provides:

In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system

evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

(2) As used in this section:

(a) "Listed offense" means that term as defined in section 2 of the sex offenders registration act, 1994 PA 295, MCL 28.722.

(b) "Minor" means an individual less than 18 years of age.

Of significance here is the statutory language allowing the admission of evidence that defendant committed another listed offense "for its bearing on any matter to which it is relevant." Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[45] Because a defendant's propensity to commit a crime makes it more probable that he committed the charged offense, MCL 768.27a permits the admission of evidence that MRE 404(b) precludes.

As the Court of Appeals has explained, "our cases have never suggested that a defendant's criminal history and propensity for committing a particular type of crime is

---

in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant.

The statute essentially parallels MRE 404(b).

[45] MRE 401.

irrelevant to a similar charge."[46] Quite the opposite, this Court has long recognized that a defendant's character and propensity to commit the charged offense is highly relevant because "an individual with a substantial criminal history is more likely to have committed a crime than is an individual free of past criminal activity."[47] Indeed, "it is because of the human instinct to focus exclusively on the relevance of such evidence that the judiciary has traditionally limited its presentation to juries."[48] Thus, the language in MCL 768.27a allowing admission of another listed offense "for its bearing on any matter to which it is relevant" permits the use of evidence to show a defendant's character and propensity to commit the charged crime, precisely that which MRE 404(b) precludes.

That the Legislature envisioned and intended the statute to supersede MRE 404(b) is unmistakable given the statute's prefatory phrase "[n]otwithstanding [MCL 768.27]." MCL 768.27 codified what later essentially became the substance of MRE 404(b). Both MCL 768.27 and MRE 404(b) limit the admissibility of other-acts evidence to consideration for noncharacter purposes, such as to show a defendant's motive, intent, or common plan or scheme. "Notwithstanding" is defined as "in spite of" or "without being opposed or prevented by[.]"[49] Parsed out, MCL 768.27a can be rephrased as follows: In spite of the statute limiting the admissibility of other-acts evidence to consideration for

---

[46] *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007).

[47] *People v Allen*, 429 Mich 558, 566; 420 NW2d 499 (1988).

[48] *Pattison*, 276 Mich App at 620.

[49] *Random House Webster's College Dictionary* (2001).

noncharacter purposes, other-acts evidence in a case charging the defendant with sexual misconduct against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. Thus, the statute establishes an exception to MRE 404(b) in cases involving a charge of sexual misconduct against a minor.

Although an issue of first impression for this Court, federal courts have concluded that FRE 414,[50] the federal counterpart of MCL 768.27a, conflicts with FRE 404(b).[51] One court explained, "[FRE 414] allows the prosecution to use evidence of a defendant's prior acts for the purpose of demonstrating to the jury that the defendant had a disposition of character, or propensity, to commit child molestation."[52] As another federal court

---

[50] In pertinent part, FRE 414, regarding similar crimes in child-molestation cases, provides: "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." FRE 414(a).

[51] FRE 404(b)(1) provides: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

[52] *United States v Castillo*, 140 F3d 874, 879 (CA 10, 1998). Our discussion of federal cases is limited to the initial question whether MCL 768.27a conflicts with MRE 404(b). Turning to federal cases addressing whether FRE 414 and FRE 404(b) conflict is useful given that MCL 768.27a and MRE 404(b) were clearly drawn from their federal counterparts. See note to MRE 404. 402 Mich xcvi. The constitutional question whether MCL 768.27a violates separation-of-powers principles, however, is unique to Michigan law. It is necessary to address the issue only because Michigan's Constitution vests in the Supreme Court the exclusive authority regarding rules of practice and procedure. Const 1963, art 6, § 5. In the federal system, "Congress has power to prescribe what evidence is to be received in the courts of the United States." *Tot v United States*, 319 US 463, 467; 63 S Ct 1241; 87 L Ed 1519 (1943). See 28 USC 2071 *et seq.*

succinctly stated, "[p]ropensity evidence is precisely what [FRE] 414 permits."[53]  The

Michigan Court of Appeals has similarly reasoned:

> When a defendant is charged with a sexual offense against a minor, MCL 768.27a allows prosecutors to introduce evidence of a defendant's uncharged sexual offenses against minors without having to justify their admissibility under MRE 404(b).  In many cases, it allows evidence that previously would have been inadmissible, because it allows what may have been categorized as propensity evidence to be admitted in this limited context.[54]

We reach the same conclusion.  Because we cannot read MCL 768.27a and MRE

404(b) in harmony, the question becomes which decree prevails—that of the Legislature

or that of the judiciary.

### B.  MCL 768.27a PREVAILS OVER MRE 404(b)

A rule of evidence will prevail over a conflicting statute only if the statute

unconstitutionally infringes on this Court's authority under Const 1963, art 6, § 5 to

"establish, modify, amend and simplify the practice and procedure in all courts of this

state."  In accordance with separation-of-powers principles, this Court's authority in

matters of practice and procedure is exclusive and therefore beyond the Legislature's

power to exercise.[55]  This exclusive authority, however, extends only to rules of practice

and procedure, as "this Court is not authorized to enact court rules that establish,

---

[53] *United States v Bentley*, 561 F3d 803, 815 n 7 (CA 8, 2009).

[54] *Pattison*, 276 Mich App at 618-619.

[55] See *McDougall*, 461 Mich at 27; *Pattison*, 276 Mich App at 619.

abrogate, or modify the substantive law."[56]  Accordingly, our task is to determine whether MCL 768.27a is an impermissible rule governing the practice and procedure of the courts or a valid enactment of substantive law.

*McDougall v Schanz* addressed whether MCL 600.2169, a statute requiring that expert witnesses offered in medical malpractice actions possess certain medical practice or teaching experience, violated the Court's exclusive authority regarding rules of practice and procedure.[57]  We harbored no doubt in *McDougall* that MCL 600.2169 acts as a rule of evidence, given that its application determines the admissibility of expert testimony in medical malpractice cases.[58]  MCL 768.27a similarly determines the admissibility of evidence that the defendant committed an offense against a minor in a case charging the defendant with the commission of a separate offense against a minor. Therefore, MCL 768.27a is also a rule of evidence.

But our analysis does not end upon reaching this conclusion.  In *McDougall*, we rejected the mechanical approach of characterizing all rules of evidence as procedural.[59]

---

[56] *McDougall*, 461 Mich at 27; see also *Shannon v Ottawa Circuit Judge*, 245 Mich 220, 223; 222 NW 168 (1928) ("'A rule of court cannot enlarge or restrict jurisdiction, or abrogate or modify the substantive law.'") (citation omitted).

[57] *McDougall*, 461 Mich at 18.  The Court determined that MCL 600.2169 conflicted with MRE 702, which permits the admission of expert testimony on the basis of "knowledge, skill, experience, training, or education."  "Anyone qualified by virtue of the MRE 702 criteria of skill, training, or education could nonetheless be excluded under the statute's strict practice or teaching requirements."  *McDougall*, 461 Mich at 25.

[58] *Id.* at 27-28.

[59] *Id*. at 29.

20

Instead, we established a sensible approach to separate procedural rules of evidence on the one hand from substantive rules of evidence on the other:

> [A] statutory rule of evidence violates Const 1963, art 6, § 5 only when "'no clear legislative policy reflecting considerations other than judicial dispatch of litigation can be identified . . . .'" Therefore, "[i]f a particular court rule contravenes a legislatively declared principle of public policy, having as its basis something other than court administration . . . the [court] rule should yield." We agree . . . that "[m]ost rules of evidence have been made by courts. Now and then the legislature has, as a result of policy consideration [sic] over and beyond matters involving the orderly dispatch of judicial business, enacted rules of evidence. The distinction previously pointed out between policy considerations involving the orderly dispatch of judicial business on the one hand and policy considerations involving something more than that on the other hand is the distinction that must be carried through into the evidence field."[60]

Thus, statutory rules of evidence that reflect policy considerations limited to "the orderly dispatch of judicial business," i.e., court administration, are procedural and violate Const 1963, art 6, § 5. But statutory rules of evidence that reflect policy considerations "over and beyond matters involving the orderly dispatch of judicial business" are substantive, and in the case of a conflict with a court rule, the legislative enactment prevails. As noted in *McDougall*, procedural rules of evidence involving the orderly dispatch of judicial business are "'those rules of evidence designed to allow the adjudicatory process to function effectively . . . . Examples are rules of evidence designed to let the jury have evidence free from the risks of irrelevancy, confusion and

---

[60] *Id*. at 30-31 (citations omitted).

fraud.'"[61] *McDougall* identified the line separating statutory rules of evidence that are constitutional from those that impermissibly venture into the area of practice and procedure over which this Court has exclusive authority.

Applying *McDougall*, we conclude that MCL 768.27a is a valid enactment of substantive law to which MRE 404(b) must yield. The statute is based on policy considerations over and beyond the orderly dispatch of judicial business. We note several policy reasons that support the Legislature's decision to allow other-acts evidence in cases involving sexual misconduct against minors. As the United States Supreme Court has observed, "[w]hen convicted sex offenders [including child molesters] reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault."[62] Evidence of guilt in child molestation cases is typically hard to come by because in most cases the only witness is the victim, whose testimony may not be available, helpful, or deemed credible because of his or her age. It may also be difficult for a jury to believe that a defendant is capable of engaging in such egregious behavior with a child. Consistent with our analysis is the fact that federal courts

---

[61] *Id.* at 31 n 15, quoting 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 403. Although we refrain from deciding cases not before us, it is not hard to see that MRE 402 and 403 are rules of the procedural variety. Likewise, it appears beyond debate that matters of discovery embody purely procedural considerations. See *United States v Nobles*, 422 US 225, 241; 95 S Ct 2160; 45 L Ed 2d 141 (1975) (rejecting the Sixth Amendment claim of a defendant who failed to comply with the trial court's discovery order because "the Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system").

[62] *McKune v Lile*, 536 US 24, 33; 122 S Ct 2017; 153 L Ed 2d 47 (2002).

considering the validity of FRE 414 have identified similar policy considerations underlying the rule that are over and beyond the orderly dispatch of judicial business. Those considerations include "[p]romoting the effective prosecution of sex offenses," "the reliance of sex offense cases on difficult credibility determinations," and "the 'exceptionally probative' value of a defendant's sexual interest in children."[63] In our judgment, MCL 768.27a was not "'designed to allow the adjudicatory process to function effectively . . . .'"[64] Rather, it reflects a substantive legislative determination that juries should be privy to a defendant's behavioral history in cases charging the defendant with sexual misconduct against a minor.

In sum, the reasons for enacting MCL 768.27a were not to further the orderly dispatch of judicial business, but to address a substantive concern about the protection of children and the prosecution of persons who perpetrate certain enumerated crimes against children and are more likely than others to reoffend. Accordingly, we hold that MCL

---

[63] *United States v Mound*, 149 F3d 799, 801 (CA 8, 1998) (citation omitted). Although the defendant in *Mound* challenged the validity of FRE 413, as opposed to FRE 414, the court indicated that its analysis applied equally to FRE 414. *Mound*, 149 F3d at 800 n 2. We also note that the court mentioned these policy considerations in the context of an equal-protection analysis to support the conclusion that FRE 413 survived rational-basis review. *Id*. at 801. As noted previously, the separation-of-powers concern at issue in this case does not arise in the federal system.

[64] *McDougall*, 461 Mich at 31 n 15, quoting 3 Honigman & Hawkins, p 403. By enacting MCL 768.27a, the Legislature merely deemed other acts of sexual misconduct against a minor substantively admissible, avoiding intrusion into the court's province over the procedural aspects of the evidence's admissibility such as relevancy, risk of prejudice, and adherence to proper discovery practices. See part III(C) of this opinion (holding that MCL 768.27a remains subject to MRE 403).

23

768.27a does not run afoul of Const 1963, art 6, § 5, and in cases in which the statute applies, it supersedes MRE 404(b).[65]

The dissent would instead hold that MCL 768.27a is unconstitutional. The dissent first takes the position that MCL 768.27a should fail the *McDougall* test because the statute primarily concerns the judicial dispatch of litigation, which the dissent says is true of all rules that have the "effect" of "telling [courts] what evidence juries can hear."[66] This is a misapplication of *McDougall*. If it were true that all rules that operate to tell courts what evidence is admissible concerned the judicial dispatch of litigation, then all rules of evidence would be procedural. But *McDougall* specifically rejected the approach of mechanically characterizing all rules of evidence as procedural. Therefore, the dissent's position is inconsistent with a proper reading of *McDougall*.

Alternatively, the dissent would refine or discard the *McDougall* test. The dissent's proposed test would treat the legislative policy concerns surrounding a statute's enactment as irrelevant to whether an evidentiary rule is substantive or procedural.[67]

---

[65] The dissent criticizes our analysis as brief and oversimplified. To the extent that our analysis is to the point, by no means do we view drawing the line between procedural and substantive rules of evidence as an easy endeavor. Nor do we take lightly the task of line-drawing in this case. Like the Court in *McDougall*, we too "appreciate the difficulty that attends the drawing of the line between 'practice and procedure' and substantive law." *McDougall*, 461 Mich at 36.

[66] *Post* at 6, 8 (emphasis omitted).

[67] *Post* at 5-6 (stating that the "laudatory nature" of the policy concerns identified in the majority opinion "is irrelevant for purposes of this Court's analysis of the issue involved in this case" because "[t]he Legislature's public policy considerations in enacting a

According to the dissent, the only inquiry should be whether the *function* of the statute "is to tell the courts what evidence they may admit in a court proceeding . . . ."[68] This approach would also mechanically characterize all rules of evidence as procedural because, as a purely *functional* matter (if we truly disregard every underlying policy concern), all evidentiary rules tell the courts what evidence is admissible.[69] Thus, although the dissent criticizes the majority's application of the *McDougall* test as vastly underinclusive in defining which evidentiary rules qualify as procedural, the dissent's alternative approaches are vastly overinclusive in defining the same.

The dissent cites the rules of privilege as an example of an area of substantive rulemaking. But rules relating to privilege still serve the exclusive *function* of telling the courts what evidence is admissible at trial and, therefore, would be procedural under the dissent's test. Privilege rules function to dictate the admissibility of communications

---

statute can neither dictate nor disguise whether the statute enacted to address those considerations is a proper exercise of legislative authority").

[68] *Post* at 10.

[69] The dissent emphasizes the placement of MCL 768.27a in the Code of Criminal *Procedure*. Reliance on labels is a reflexive practice that the United States Supreme Court and the courts of this state have admonished against. See, e.g., *Henneford v Silas Mason Co, Inc*, 300 US 577, 586; 57 S Ct 524; 81 L Ed 814 (1937) ("Catch words and labels . . . are subject to the dangers that lurk in metaphors and symbols, and must be watched with circumspection lest they put us off our guard."); *People v Evans*, 491 Mich 1; 810 NW2d 535 (2012) (applying the Supreme Court's holding that a trial court's label of "acquittal" for a given ruling does not determine whether an acquittal actually occurred for double-jeopardy purposes); *Klein v Kik*, 264 Mich App 682, 686; 692 NW2d 854 (2005) (reasoning that a party's label for its cause of action is not dispositive of the actual nature of the claim).

made between parties in certain relationships; accordingly, privilege rules tell the courts what evidence is admissible at trial.[70]

The dissent asserts that privileges and other substantive rules of evidence "do far more than dictate what evidence is admissible in a court proceeding; they directly affect people's out-of-court behavior."[71] We do not disagree that privileges influence out-of-court behavior by "promot[ing] free and open expression in certain relationships with the confidence that what is communicated will not be revealed in a court proceeding."[72] What the dissent fails to appreciate, however, is that the goal of promoting free expression and confidence in certain relationships is nothing more than a policy concern advanced by the Legislature, which runs directly counter to the dissent's position that legislative policy concerns are irrelevant. It is neither proper nor sensible to conclude that court rules should yield to statutes that are grounded in some policy concerns (e.g., a concern for promoting free expression and confidence in certain relationships) but not others (e.g., a concern for protecting children and addressing the high recidivism rates of

---

[70] We disagree with the dissent's characterization of privilege rules as having only "an incidental effect on the admissibility of evidence in a court proceeding." *Post* at 11-12. For example, Michigan's marital privilege statute, MCL 600.2162(1), provides: "In a civil action or administrative proceeding, a husband shall not be examined as a witness for or against his wife without her consent or a wife for or against her husband without his consent . . . ." The statute pertains precisely to the admissibility of a spouse's testimony in court.

[71] *Post* at 10.

[72] Baughman, *The emperor's old clothes: A prosecutor's reply to Mr. Leitman concerning exclusion of evidence for statutory violations*, 1999 L R Mich St U Det C L 701, 716.

child molesters). Thus, we question the wisdom of drawing a distinction that is based on whether an evidentiary rule directly influences people's out-of-court behavior.

Finally, we note as one example that the dissent's proposed test would mean the end of Michigan's rape-shield statute, MCL 750.520j, a consequence that the dissent does not dispute. Yet the United States Supreme Court has endorsed Michigan's rape-shield statute and described it as "represent[ing] a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy."[73] And although the Supreme Court did not specifically address the separation-of-powers issue,[74] rape-shield laws have been upheld even in the face of a constitutional provision analogous to Const 1963, art 6, § 5.[75] We reiterate our belief that

---

[73] *Michigan v Lucas*, 500 US 145, 149-150; 111 S Ct 1743; 114 L Ed 2d 205 (1991).

[74] See *id*. Without discussing Const 1963, art 6, § 5, the United States Supreme Court vacated the judgment of the Michigan Court of Appeals, which had adopted a rule that precluding evidence of a rape victim's sexual history with a criminal defendant necessarily violates the Sixth Amendment. See *People v Lucas*, 160 Mich App 692, 694-695; 408 NW2d 431 (1987).

[75] See, e.g., *People v McKenna*, 196 Colo 367, 371-372; 585 P2d 275 (1978) (upholding Colorado's rape-shield law because it "represents far more than merely a legislative attempt to regulate the day-to-day procedural operation of the courts"). The dissent's reliance on *State v Mallard*, 40 SW3d 473 (Tenn, 2001), and *Opinion of the Justices (Prior Sexual Assault Evidence)*, 141 NH 562; 688 A2d 1006 (1997), is misplaced. *Mallard* dealt with a statute that, according to the Tennessee Supreme Court, if strictly construed, would interfere with the judiciary's authority to determine the *relevancy* of evidence. *Mallard*, 40 SW3d at 483. Similarly, in *Opinion of the Justices*, the New Hampshire Supreme Court construed the proposed legislation at issue as "restrict[ing] the trial court's exercise of discretion in making an initial determination that the offered evidence is *relevant*." *Opinion of the Justices*, 141 NH at 576 (emphasis added). We agree that "any legislative enactment that purports to remove the discretion of a trial judge in making determinations of logical or legal relevancy impairs the independent

---

the sensible divide is between rules involving considerations limited to the orderly dispatch of judicial business, which are procedural, and rules involving considerations over and beyond the orderly dispatch of judicial business, which are substantive. This position recognizes the powers and limitations of both the judicial and the legislative rulemaking authority.

## C. MCL 768.27a REMAINS SUBJECT TO MRE 403

Having determined that MCL 768.27a is a valid enactment of substantive law, the question remains whether evidence admissible under the statute may nonetheless be excluded under MRE 403. For the reasons that follow, we hold that evidence admissible pursuant to MCL 768.27a may nonetheless be excluded under MRE 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The argument against applying MRE 403 to evidence admissible under MCL 768.27a comes not from the text of either MRE 403 or MCL 768.27a, but from the text of

---

operation of the judicial branch of government, and no such measure can be permitted to stand." *Mallard*, 40 SW3d at 483. MCL 768.27a, however, does not remove this discretion. Rather, the statute merely deems certain other-acts evidence "admissible" and provides that this evidence "may be considered for its bearing on any matter to which it is relevant," with the determination of relevancy left to the trial court's discretion. Finally, with regard to the dissent's reliance on *State v Gresham*, 173 Wash 2d 405, 431; 269 P3d 207 (2012), we simply disagree with the Washington Supreme Court's seemingly mechanical approach, which concluded that "the admission of evidence is a procedural matter to be controlled by the courts . . . ." This rationale is oversimplified and would define, categorically, all rules of evidence as procedural, a position that was rejected in *McDougall* and again today.

28

MCL 768.27b, which pertains to other-acts evidence in domestic violence cases. MCL 768.27b provides that "evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, *if it is not otherwise excluded under Michigan rule of evidence 403*."[76] It is this emphasized portion of the statute that has generated disagreement surrounding whether MRE 403 applies to MCL 768.27a.

Unlike MCL 768.27b, MCL 768.27a does not explicitly mention MRE 403: "Notwithstanding [MCL 768.27], . . . evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." Accordingly, it is argued that if the Legislature expressly made other-acts evidence under MCL 768.27b subject to MRE 403 in cases of domestic violence, then the failure to mention MRE 403 in MCL 768.27a indicates that the Legislature did not intend MRE 403 to apply with regard to other-acts evidence in cases involving sexual misconduct against minors. We reject the invitation to draw this inference.

Significantly, the Legislature did not draft these statutes simultaneously. MCL 768.27a was enacted by 2005 PA 135, which became effective January 1, 2006, whereas MCL 768.27b was enacted by 2006 PA 78, which became effective March 24, 2006. The Legislature's "silence" from which it is urged we draw an inference occurred in the earlier enactment. It is one thing to infer legislative intent through silence in a simultaneous or subsequent enactment, but quite another to infer legislative intent

---

[76] Emphasis added.

through silence in an earlier enactment, which is only "silent" by virtue of the subsequent enactment.

We are also mindful of "consider[ing] whether [the statute and rule of evidence] can be construed so as not to conflict,"[77] and "[w]e do not lightly presume that the Legislature intended a conflict . . . ."[78]  Unlike the irreconcilable conflict between MCL 768.27a and MRE 404(b), there is nothing inherent in the statute that prevents the application of MRE 403.  And because MCL 768.27a makes no specific mention of MRE 403, we choose not to presume that the Legislature intended that MRE 403 not apply to other-acts evidence admissible under the statute.  The Legislature could have expressly exempted evidence admissible under MCL 768.27a from analysis under MRE 403, but it did not.

Furthermore, as the United States Supreme Court has observed,

"not every silence is pregnant."  In some cases, Congress intends silence to rule out a particular statutory application, while in others Congress' silence signifies merely an expectation that nothing more need be said in order to effectuate the relevant legislative objective.  An inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent.[79]

In closely examining the statutes, all other textual and contextual evidence of the Legislature's intent runs contrary to inferring that MRE 403 does not apply to evidence

---

[77] *McDougall*, 461 Mich at 24.

[78] *Dobben*, 440 Mich at 697 n 22.

[79] *Burns v United States*, 501 US 129, 136; 111 S Ct 2182; 115 L Ed 2d 123 (1991), quoting *Illinois Dep't of Pub Aid v Schweiker*, 707 F2d 273, 277 (CA 7, 1983).

30

admissible under MCL 768.27a. Despite some similarities, there are notable differences between the two statutes.

First, the Legislature used the permissive term "may" in MCL 768.27a but not in MCL 768.27b. Under MCL 768.27a, "evidence that the defendant committed another listed offense against a minor *is admissible*," but the statute goes on to provide that such evidence "*may* be considered for its bearing on any matter to which it is relevant."[80] When the statute is read as a whole, the phrase "is admissible" is qualified by the phrase "may be considered," thereby indicating that admissibility remains subject to some level of discretion on the part of the trial court. As this Court has explained, "courts should give the ordinary and accepted meaning to . . . the permissive word 'may' unless to do so would clearly frustrate legislative intent as evidenced by other statutory language or by reading the statute as a whole."[81] Because there is no indication in MCL 768.27a that "may" should be interpreted contrary to its generally accepted meaning, the term is permissive, not mandatory. By providing that evidence admissible under MCL 768.27a "*may* be considered," the Legislature necessarily contemplated that evidence admissible under the statute need not be considered in all cases and that whether and which evidence would be considered would be a matter of judicial discretion, as guided by the rules of evidence. The most obvious rule available to guide courts in exercising this discretion is MRE 403.

---

[80] Emphasis added.

[81] *Browder v Int'l Fidelity Ins Co*, 413 Mich 603, 612; 321 NW2d 668 (1982).

By contrast, MCL 768.27b contains no permissive language. MCL 768.27b(1) simply provides that "evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant . . . ." Perhaps it was the choice to omit the permissive language that prompted the Legislature to qualify the admissibility of other-acts evidence under MCL 768.27b with the language "if it is not otherwise excluded under Michigan rule of evidence 403." We choose not to speculate in this regard. Whatever motivated the Legislature to draft the statutes differently, we must give meaning to the permissive term "may" used by the Legislature in MCL 768.27a.

Second, we must give effect to the prefatory clause "[n]otwithstanding [MCL 768.27]" contained in MCL 768.27a but absent from MCL 768.27b. MCL 768.27a provides, "Notwithstanding [MCL 768.27], in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." The specific mention of MCL 768.27, and no other rule or principle of evidence, is significant. MCL 768.27 provides:

> In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant.

Giving effect to the statute's reference to MCL 768.27, MCL 768.27a means that other-acts evidence in cases involving sexual misconduct against a minor "may be

32

considered for its bearing on any matter to which it is relevant" *notwithstanding* that MCL 768.27 limits the admissibility of other-acts evidence to consideration for noncharacter purposes.  MCL 768.27a does not apply "notwithstanding any rule or principle of evidence," but only "[n]otwithstanding [MCL 768.27]."  Put simply, we cannot interpret the prefatory phrase "[n]otwithstanding [MCL 768.27]" to mean "notwithstanding [MCL 768.27] and MRE 403."  We similarly refuse to read into MCL 768.27a a legislative intent to foreclose the application of other ordinary rules of evidence, such as those pertaining to hearsay and privilege.

In sum, the "silence" in MCL 768.27a arose only by virtue of the subsequent enactment of MCL 768.27b, MCL 768.27a can be read in harmony with MRE 403, and we must give effect to the permissive term "may" and the phrase "[n]otwithstanding [MCL 768.27]" that are present in MCL 768.27a but absent from MCL 768.27b.  For all these reasons, we hold that MRE 403 applies to evidence admissible under MCL 768.27a.[82]

## D.  COURTS MUST WEIGH THE PROPENSITY INFERENCE IN FAVOR OF THE EVIDENCE'S PROBATIVE VALUE

Our conclusion that other-acts evidence admissible under MCL 768.27a remains subject to MRE 403 gives rise to the question of proper application.  As with any balancing test, MRE 403 involves two sides of a scale—a probative side and a prejudicial side.  Propensity evidence is prejudicial by nature, and it is precisely the danger of

---

[82] Given this conclusion, we need not address whether, if evidence admissible under MCL 768.27a were *not* subject to MRE 403, the statute would violate a defendant's due-process right to a fair trial or interfere with the judicial power to ensure that a criminal defendant receives a fair trial.

prejudice that underlies the ban on propensity evidence in MRE 404(b). Yet were a court to apply MRE 403 in such a way that other-acts evidence in cases involving sexual misconduct against a minor was considered on the prejudicial side of the scale, this would gut the intended effect of MCL 768.27a, which is to allow juries to consider evidence of other acts the defendant committed to show the defendant's character and propensity to commit the charged crime. To weigh the propensity inference derived from other-acts evidence in cases involving sexual misconduct against a minor on the prejudicial side of the balancing test would be to resurrect MRE 404(b), which the Legislature rejected in MCL 768.27a.

Accordingly, when applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect. That is, other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference. In reaching this conclusion, we join several federal courts that have addressed this issue with respect to FRE 414 and 403.[83]

---

[83] See, e.g., *United States v Loughry*, 660 F3d 965, 970 (CA 7, 2011) ("[A]lthough evidence cannot be excluded under [FRE] 403 simply because it tends to show that the defendant has a propensity to commit a sex offense, [FRE] 403 continues to rigorously apply to [FRE] 414 evidence."); *United States v Benais*, 460 F3d 1059, 1063 (CA 8, 2006) ("[FRE] 403 must be applied in this context in a manner that permits [FRE] 413 and 414 to have their intended effect, namely, to permit the jury to consider a defendant's prior bad acts in the area of sexual abuse or child molestation for the purpose of showing propensity."); *United States v Gabe*, 237 F3d 954, 960 (CA 8, 2001) ("[Other-acts evidence] tends to prove [a defendant's] propensity to molest young children . . . . Because propensity evidence is admissible under [FRE] 414, this is not *unfair* prejudice."); *United States v Larson*, 112 F3d 600, 604-605 (CA 2, 1997) (stating that evidence admissible under FRE 414 is presumed relevant and probative).

34

This does not mean, however, that other-acts evidence admissible under MCL 768.27a may never be excluded under MRE 403 as overly prejudicial. There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony.[84] This list of considerations is meant to be illustrative rather than exhaustive.

Several of these considerations are challenged in this appeal. Regarding the decision whether to exclude evidence admissible under MCL 768.27a when applying MRE 403, it is argued that courts should not be permitted to consider how long ago the other act occurred, its dissimilarity to the charged offense, or the fact that the defendant was never convicted of the other act. We disagree.

Although MCL 768.27b expressly imposes a 10-year limitation on the admissibility of other-acts evidence in domestic violence cases, whereas MCL 768.27a provides no such limitation, there is simply no legal basis for concluding that the lack of a temporal limitation in MCL 768.27a somehow means that the length of time since the other act of sexual misconduct against a minor occurred cannot be considered when weighing prejudice under MRE 403. Just as the statute's failure to refer to MRE 403 did

---

[84] See *United States v LeMay*, 260 F3d 1018, 1032 (CA 9, 2001); *United States v Guardia*, 135 F3d 1326, 1331 (CA 10, 1998).

not bar the court rule's application, the failure to temporally limit the admissibility of other-acts evidence does not preclude a court from considering under MRE 403 how long ago the other act occurred.

The argument that the dissimilarity of the other-acts evidence and the charged offense should not be considered under MRE 403 similarly fails. Although MCL 768.27a, by its terms, applies to all listed offenses, there is no indication that the Legislature intended to suggest that all listed offenses are sufficiently similar to each other that the dissimilarity between them and the charged offense could never be weighed in favor of concluding that the other-acts evidence presents the danger of unfair prejudice under MRE 403.

Finally, it is argued that, because MCL 768.27a applies to more than conduct that resulted in a conviction, whether the evidence of the other act resulted in a conviction is irrelevant under MRE 403. We disagree. That MCL 768.27a *permits* the introduction of other-acts evidence that did not result in a conviction does not mean that evidence that did not result in a conviction *must* be admitted or that a court may not consider whether charges were filed or a conviction rendered when weighing the evidence under MRE 403.[85]

The foregoing considerations may be used by trial courts to determine whether the probative value of evidence admissible under MCL 768.27a—which includes the

---

[85] At relevant times, a conviction was not required for many types of other-acts evidence to qualify as a listed offense, but a conviction was required for an act of indecent exposure to be admissible under MCL 768.27a. See MCL 28.722(e)(*iii*) as added by 2005 PA 301; see also pages 41 through 43 of this opinion.

36

propensity inference derived from the other-acts evidence—is nonetheless outweighed by the danger of unfair prejudice. Trial courts should apply this balancing to each separate piece of evidence offered under MCL 768.27a. In addition, trial courts retain their discretion under MRE 403 to determine how many separate pieces of other-acts evidence may be admitted before the probative value of such evidence is outweighed by the danger of "confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[86] This determination can only be made in the context of the entire trial, considering all the other-acts evidence offered under MCL 768.27a as well as the evidence as a whole. There is no bright-line rule for how many "other acts" may be admitted before the scale tips in favor of exclusion. Rather, ensuring that the probative value of other-acts evidence is not outweighed by the danger of "confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence" is a responsibility left to the trial court's discretion.

A final tool available for trial courts when admitting other-acts evidence under MCL 768.27a is CJI2d 20.28a, the standard instruction on evidence of other acts of child sexual abuse:

> (1) The prosecution has introduced evidence of claimed acts of sexual misconduct by the defendant with [a minor / minors] for which [he / she] is not on trial.

> (2) Before you may consider such alleged acts as evidence against the defendant, you must first find that the defendant actually committed those acts.

---

[86] MRE 403.

(3) If you find that the defendant did commit those acts, you may consider them in deciding if the defendant committed the [offense / offenses] for which [he / she] is now on trial.

(4) You must not convict the defendant here solely because you think [he / she] is guilty of other bad conduct. The evidence must convince you beyond a reasonable doubt that the defendant committed the alleged crime, or you must find [him / her] not guilty.

In cases in which a trial court determines that MRE 403 does not prevent the admission of other-acts evidence under MCL 768.27a, this instruction is available to ensure that the jury properly employs that evidence.

## IV. APPLICATION

### A. DOCKET NO. 142031

In Docket No. 142031, at Watkins's third and final trial, the trial court permitted EW to testify regarding other acts of alleged criminal sexual conduct and their surrounding circumstances. On appeal, the Court of Appeals properly confirmed its earlier holding that MCL 768.27a conflicts with MRE 404(b) and that the statute prevails over the rule of evidence.[87] It also properly held that evidence admissible under MCL 768.27a remains subject to MRE 403.[88] Further, we agree with the Court of Appeals' conclusion that the trial court's failure to apply MRE 403 was harmless. In addition to being probative because of the propensity inference, the other-acts evidence also supported the victim's credibility, presented circumstances similar to those underlying the charged offense, and established Watkins's modus operandi. And although the trial

---

[87] *Watkins*, unpub op at 4.

[88] *Id*. at 5.

38

court failed to determine which aspects of EW's testimony met the requirements of MCL 768.27a, we agree with the Court of Appeals that the only incident for which EW provided specific details met the statute's requirements and, therefore, any error in admitting all of EW's testimony "was not inconsistent with substantial justice."[89] Finally, in accordance with CJI2d 20.28a, the jury was instructed on how to properly use the other-acts evidence. Accordingly, we affirm in *Watkins*.

## B. DOCKET NO. 142751

In Docket No. 142751, the trial court granted Pullen's motion in limine, excluding a 1989 police report containing allegations that Pullen had sexually abused his daughter more than 20 years ago. Although the trial court properly concluded that evidence admissible under MCL 768.27a remains subject to MRE 403, it abused its discretion by misapplying MRE 403.

First, the trial court failed to weigh the propensity inference in favor of the evidence's probative value. Nowhere in its analysis did the trial court mention that the other-acts evidence was probative of Pullen's character or propensity to commit the charged offense. Instead, the court stated that, "[s]hould this evidence be presented to the jury, it is highly probable that the jury would not be able to separate the two cases and would likely decide the case based on emotional impact rather than logical reasons." The Court of Appeals affirmed, characterizing this flawed reasoning as having "provided a reasoned basis" for the trial court's decision.[90]

---

[89] *Id*. at 8.

[90] *Pullen*, unpub op at 4.

39

Second, the trial court failed to weigh in favor of the evidence's probative value the extent to which the other-acts evidence supported the victim's credibility and rebutted the defense's attack thereof.[91] Pullen admitted that his trial strategy was to attack the victim's credibility, and the other-acts evidence was highly probative for rebuttal purposes and tended to support the victim's credibility.[92]

Third, the trial court failed to review separately under MRE 403 each act alleged in the 1989 report and instead lumped all of the evidence together. The trial court

---

[91] The dissent disagrees, but offers no authority or rationale for doing so.

[92] We acknowledge the holdings in *People v Sabin (After Remand)*, 463 Mich 43, 71; 614 NW2d 888 (2000), and *People v Jones*, 417 Mich 285, 289-290; 335 NW2d 465 (1983), both of which precluded the introduction of evidence of sexual acts between the defendant and persons other than the complainant to bolster the complainant's credibility. This case is distinguishable because it involved the admissibility of other-acts evidence under MCL 768.27a. In *Sabin*, for example, the reason for disallowing the admission of other-acts evidence under MRE 404(b) to bolster the complainant's credibility was that the resulting inference essentially involved propensity. As explained in *People v Oliphant*, 399 Mich 472, 517; 250 NW2d 443 (1976):

> Other allegations of rape do tend to make the complainant's story more believable, not because we know more about her or Oliphant's tendency to tell the truth, but because such evidence gives us reason to believe that he is the kind of man who would commit the charged offense. That, however, is precisely the purpose for which this evidence may not be admitted.

Stated differently, the danger in admitting other-acts evidence to bolster the complainant's credibility is that it essentially invites the jury to draw a propensity inference. As we concluded in part III(A) of this opinion, however, MCL 768.27a specifically *permits* the use of other-acts evidence to show a defendant's propensity to commit the charged crime. Because propensity evidence tends to make the complainant's story more believable, it would not make sense to conclude that evidence admissible to show the defendant's propensity to commit the charged offense is inadmissible to bolster the complainant's credibility. The defendant's propensity and the complainant's credibility are two sides of the same coin.

40

apparently believed that the egregiousness of some of the other-acts evidence—e.g., the allegation made by Pullen's daughter that he "checked if [she] was still a virgin"— justified excluding all the other-acts evidence as overly prejudicial. The various acts revealed in the 1989 report included digital penetration, unwelcome and inappropriate touching, and indecent exposure. The trial court should have considered each act separately.[93]

Finally, the evidence of indecent exposure at issue here did not qualify as a listed offense under MCL 768.27a at times relevant to the instant case and, therefore, its admissibility should have been analyzed under MRE 404(b). The offense of aggravated indecent exposure is set forth at MCL 750.335a.[94] Currently, § 2 of the Sex Offenders

---

[93] Support for this conclusion exists in the language of MRE 403, which provides that "evidence may be excluded if *its* probative value is substantially outweighed by the . . . *needless presentation of cumulative evidence*." (Emphasis added.) The rule thus contemplates the evaluation of an individual piece of evidence and how it compares to the other evidence sought to be admitted. This is not, as the dissent believes, a mere difference in judicial opinion. The dissent fails to cite any authority to support the proposition that the trial court did not err by lumping the other-acts evidence together for purposes of applying MRE 403. Rather than offer support for its own position, the dissent criticizes our analysis as selectively quoting MRE 403 by omitting all the language preceding "needless presentation of cumulative evidence," as if we have not considered the statute as a whole. Not so. Although, as the dissent observes, the "needless presentation of cumulative evidence" is but one basis for finding evidence excludable under MRE 403, the dissent does not explain how a trial court can consider this basis if it assesses the evidence when it is lumped together. The lumping of evidence leads to an all-or-nothing determination of admissibility; it does not leave room to determine a cumulative breaking point. Thus, unlike the dissent's position, our reading of MRE 403 adheres to the interpretive canon that "[c]ourts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that renders nugatory or surplusage any part of a statute." *People v Couzens*, 480 Mich 240, 249; 747 NW2d 849 (2008) (citation and quotation marks omitted).

[94] MCL 750.335a provides:

Registration Act (SORA), MCL 28.721 *et seq.*, defines "listed offense" as including "[a] violation of [MCL 750.335a(2)(b)] . . . if a victim is a minor."[95] At times relevant to this case, however, § 2 of SORA defined "listed offense" to mean "[a] violation of [MCL 750.335a(2)(b)] . . . *if that individual was previously convicted of violating [MCL 750.335a]*."[96] Pullen was never convicted of violating MCL 750.335a for exposing himself to his daughter more than 20 years ago, as alleged in the 1989 police report. Indeed, criminal charges were never filed. Because the evidence was not a listed offense under SORA and hence not admissible as a listed offense under MCL 768.27a, the trial

---

(1) A person shall not knowingly make any open or indecent exposure of his or her person or of the person of another.

(2) A person who violates subsection (1) is guilty of a crime, as follows:

(a) Except as provided in subdivision (b) or (c), the person is guilty of a misdemeanor punishable by imprisonment for not more than 1 year, or a fine of not more than $1,000.00, or both.

(b) If the person was fondling his or her genitals, pubic area, buttocks, or, if the person is female, breasts, while violating subsection (1), the person is guilty of a misdemeanor punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

(c) If the person was at the time of the violation a sexually delinquent person, the violation is punishable by imprisonment for an indeterminate term, the minimum of which is 1 day and the maximum of which is life.

[95] MCL 28.722(k) and (s)(*ii*). This amended version of § 2 of SORA became effective July 1, 2011. See enacting § 2 of 2011 PA 17.

[96] MCL 28.722(e)(*iii*), as added by 2005 PA 301 (emphasis added). This amended version of § 2 of SORA became effective February 1, 2006.

42

court should have analyzed its admissibility under MRE 404(b).[97]  Accordingly, we vacate the judgments of the lower courts in *Pullen* and remand the case to the trial court for further proceedings consistent with this opinion.

## V.  CONCLUSION

In conclusion, we hold that MCL 768.27a irreconcilably conflicts with MRE 404(b) and that the statute prevails over the court rule.  We also hold that evidence admissible under MCL 768.27a remains subject to MRE 403, but that courts must weigh the propensity inference in favor of the evidence's probative value rather than its

---

[97] By "fail[ing] to see how the trial court can apply MRE 403 to [the indecent exposure] evidence differently if it is admitted under MRE 404(b) rather than MCL 768.27a," *post* at 21, the dissent apparently fails to understand part III(D) of this opinion.  In part III(D), we explain that MRE 403 applies differently to evidence admissible under MCL 768.27a.  The difference is that courts must weigh the propensity inference in favor of the evidence's probative value.  Nonetheless, the dissent is correct in pointing out that because MRE 404(b) does not allow other-acts evidence to be admitted to show propensity, the evidence of indecent exposure may well be *less* probative under MRE 404(b) than under MCL 768.27a.  However, this does not mean that "there is no basis for concluding that the trial court's MRE 403 balancing would come out differently." *Post* at 22.  In this case, the inquiry of outcome-determinative error is complicated by the fact that the trial court improperly lumped all the evidence together for purposes of applying MRE 403.  Just because the trial court applied MRE 403 to exclude *all* evidence contained in the 1989 police report that it believed was admissible under MCL 768.27a does not mean that it would have applied MRE 403 to exclude the evidence of indecent exposure had it properly considered its admissibility *separately* under MRE 404(b).  This is the same reason for our reservations regarding the trial court's second basis for excluding the 1989 police report in its entirety, which was that "it would be fundamentally unfair and a violation of due process to force [Pullen] to defend accusations from over 20 years ago for which charges were never filed."  Although every piece of evidence contained in the report would be equally prejudicial on this basis if admitted, not every piece of evidence contained in the report would be equally probative if admitted.  Given the varying probative values of the evidence contained in the report, in our view, the dissent's preference to affirm the judgments below would involve too much speculation.

43

prejudicial effect. For the foregoing reasons, we affirm the Court of Appeals' judgment in *Watkins*, Docket No. 142031, vacate the judgments of the lower courts in *Pullen*, Docket No. 142751, and remand the latter case to the trial court for further proceedings consistent with this opinion.

Brian K. Zahra
Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly

44

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                            No. 142031

LINCOLN ANDERSON WATKINS,

      Defendant-Appellant.

_____

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                            No. 142751

RICHARD KENNETH PULLEN,

      Defendant-Appellee.

_____

MARILYN KELLY, J. (*dissenting*).

I concur with the result reached in part III(A) of the majority opinion. Specifically, I agree that MCL 768.27a and MRE 404(b) irreconcilably conflict.

However, I strongly dissent from the majority's conclusion in part III(B) that MCL 768.27a prevails over MRE 404(b). I would hold that MCL 768.27a is an unconstitutional legislative intrusion into the power of the judiciary to "establish, modify, amend and simplify the practice and procedure in all courts of this state."[1]  Because I

_____

[1] Const 1963, art 6, § 5.

would hold that MCL 768.27a is unconstitutional, I would not reach the issues discussed in parts III(C) and (D) of the majority opinion. Finally, I disagree with the decision in part IV(A) of the majority opinion to affirm defendant Watkins's convictions and the criticism in part IV(B) of the trial court's MRE 403 analysis regarding defendant Pullen.

Accordingly, I would reverse the Court of Appeals' judgment in *Watkins*, overrule its prior holding in *People v Pattison*[2] that MCL 768.27a is constitutional, and remand *Watkins* for a new trial. In *Pullen*, I would affirm the Court of Appeals' judgment and its conclusion that the trial court did not abuse its discretion by excluding the challenged evidence under MRE 403.

## LEGAL BACKGROUND

The Michigan Constitution divides the state's government into three branches: the legislative, the executive, and the judicial.[3] Judicial power is vested exclusively in the judiciary.[4] The Constitution grants this Court the authority to make rules that "establish,

---

[2] *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007); see *People v Watkins*, 277 Mich App 358; 745 NW2d 149 (2007) (following *Pattison*).

[3] Const 1963, art 3, § 2 provides that "[t]he powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution."

[4] Const 1963, art 6, § 1 provides that

> [t]he judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish by a two-thirds vote of the members elected to and serving in each house.

2

modify, amend and simplify the practice and procedure in all courts of this state."[5] Therefore, if the Legislature enacts a statute that conflicts with a court rule, the rule prevails over the statute if both address a matter of "practice and procedure."[6]

This constitutional provision was long understood to vest in this Court the power to promulgate all rules of evidence used in court proceedings.[7] However, in *McDougall v Schanz*,[8] a majority of this Court overruled that precedent. The *McDougall* majority held that this Court's authority over "practice and procedure" did not include all matters relating to the admission of evidence.[9] Instead, it held that a legislatively created rule of evidence would not violate article 6, § 5 of the Michigan Constitution unless "'no clear legislative policy reflecting considerations other than judicial dispatch of litigation can be identified . . . .'"[10] In sum, *McDougall* held that a substantive rule of evidence created by the Legislature prevails over a Court-created substantive rule of evidence. *McDougall*

---

[5] Const 1963, art 6, § 5; see also Const 1908, art 7, § 5 ("The supreme court shall by general rules establish, modify and amend the practice in such court and in all other courts of record, and simplify the same."), and Const 1850, art 6, § 5 ("The supreme court shall, by general rules, establish, modify, and amend the practice in such court and in the circuit courts, and simplify the same.").

[6] See, e.g., *In re Koss' Estate*, 340 Mich 185, 189-190; 65 NW2d 316 (1954).

[7] *People v Mitchell*, 402 Mich 506, 518; 265 NW2d 163 (1978); *Perin v Peuler (On Rehearing)*, 373 Mich 531, 541; 130 NW2d 4 (1964).

[8] *McDougall v Schanz*, 461 Mich 15; 597 NW2d 148 (1999).

[9] *Id*. at 29.

[10] *Id.* at 30, quoting *Kirby v Larson*, 400 Mich 585, 598; 256 NW2d 400 (1977) (opinion by WILLIAMS, J.) (citation and quotation marks omitted).

3

also noted that "this Court is not authorized to enact court rules that establish, abrogate, or modify the substantive law."[11]

In *Pattison*, the Court of Appeals relied on *McDougall* and concluded that MCL 768.27a was a substantive, not a procedural, rule of evidence. As a result, *Pattison* held that the statute did not violate the separation of powers provision of the Michigan Constitution. The panel reasoned that the statute "does not principally regulate the operation or administration of the courts," but instead "reflects the Legislature's policy decision that, in certain cases, juries should have the opportunity to weigh a defendant's behavioral history and view the case's facts in the larger context that the defendant's background affords."[12]

---

[11] *McDougall*, 461 Mich at 27, citing *Shannon v Ottawa Circuit Judge*, 245 Mich 220, 223; 222 NW 168 (1928).

[12] *Pattison*, 276 Mich App at 619-620.

4

MCL 768.27a VIOLATES THE SEPARATION OF POWERS PROVISION UNDER *McDOUGALL* WHEN *McDOUGALL* IS CORRECTLY APPLIED[13]

MCL 768.27a should fail the *McDougall* test. The statute does not implement a "clear legislative policy reflecting considerations other than judicial dispatch of litigation."[14] To be sure, the statute may very well have been enacted to address legislative policy concerns; such a conclusion seems beyond dispute. The majority identifies several public policy concerns supporting the Legislature's decision to enact MCL 768.27a. They include (1) the high rate of recidivism among child molesters, (2) the difficulty of obtaining evidence that secures convictions in child-molestation cases, and (3) the desire to further protect children from molestation.

These are laudable public policy concerns. But their laudatory nature is irrelevant for purposes of this Court's analysis of the issue involved in this case. The Legislature's public policy considerations in enacting a statute can neither dictate nor disguise whether

---

[13] The *McDougall* test does not predetermine the conclusion reached by the majority that MCL 768.27a is substantive. However, as I stated in my dissent in *People v Hickman*, 470 Mich 602, 613 n 3; 684 NW2d 267 (2004), "I did not then, nor do I now, agree with the majority opinion in *McDougall*." Rather, I continue to agree with the analysis in Justice CAVANAGH's dissenting opinion in *McDougall*, 461 Mich at 37-72, which I signed.

For this reason, it is difficult to know where to begin: with my disagreement with the *McDougall* test itself or merely with this Court's application of it. Because *McDougall* is binding precedent, but proper application of the *McDougall* test nevertheless supports my conclusion that MCL 768.27a is not "substantive," I begin by applying *McDougall*. However, as I conclude later in this opinion, there are numerous reasons why this Court should discard the *McDougall* test.

[14] *McDougall*, 461 Mich at 30 (citations and quotation marks omitted).

5

the statute enacted to address those considerations is a proper exercise of legislative authority.[15]

The crucial question is not whether the *policy concerns themselves* are substantive. Rather, it is whether the *effect* of the statutory enactment changes substantive law. If the statute affects strictly procedural rather than substantive matters, that statute violates Const 1963, art 6, § 5.[16] Contrary to the majority's conclusion, enacting MCL 768.27a to achieve the Legislature's policy goals does not, as the Constitution puts it, reflect considerations beyond the judicial dispatch of litigation.

When the Legislature enacted MCL 768.27a, the sole mechanism it used to achieve its policy concerns was to alter the standard under which other-acts evidence is admissible in court.[17] Thus, the relevant policy consideration that we must analyze is

---

[15] This point is aptly demonstrated by illustration. Consider a statute that states only that everyone present in a courtroom must, before proceedings commence, recite the Pledge of Allegiance. Such a statute would be an unconstitutional regulation of "practice and procedure" because it would establish a mandatory prerequisite to the "judicial dispatch of litigation." This would be true even if the Legislature identified some "substantive" policy considerations unrelated to the "judicial dispatch of business," such as encouraging patriotism, as its motivation for enacting the statute. The Legislature is free to try to achieve that substantive goal by other means, but not by dictating a mandatory procedure in the courts.

[16] See Joiner & Miller, *Rules of practice and procedure: A study of judicial rule making*, 55 Mich L R 623, 634 (1957) ("[T]he word 'practice' . . . clearly embraces all 'how,' leaving to the legislature 'what' in substantive law creating legal rights and duties.").

[17] It is noteworthy that the Legislature enacted MCL 768.27a at the same time that it passed other laws in an effort to protect children from convicted sex offenders. The great majority of these provisions caused substantive changes in the law. See, e.g., 2005 PA 133, creating MCL 722.115e, which made it a crime for an employee of a childcare center to fail to report that he or she had been arraigned for certain criminal offenses involving children.

6

precisely that: Is the admission of previously inadmissible evidence in child-sex-abuse cases a substantive or a procedural issue?[18] This conclusion is consistent with our rule of statutory construction that "[i]n determining the intent of the Legislature, this Court must first look to the language of the statute."[19] The majority's application of *McDougall* fails this principle by failing to look first at the statutory language.

"It is fundamental to American jurisprudence that 'a defendant must be tried for what he did, not for who he is.'"[20] MRE 404(b) regulates how and when relevant evidence of a defendant's other crimes, wrongs, or acts may be admitted in court. As such, it is fundamentally procedural in nature because it concerns a matter that is solely within the province of the judiciary: the "judicial dispatch of litigation."[21]

---

Moreover, the Legislature has enacted numerous substantive laws advancing many of the same policy considerations the majority identified in this case. See, e.g., 2006 PA 165, amending MCL 750.520b to increase the penalty for first-degree criminal sexual conduct against a minor under 13 years of age by repeat offenders under certain circumstances. Thus, if the Court were to hold MCL 768.27a unconstitutional, it would not greatly deter the Legislature from advancing its policy goals.

[18] See also *Pattison*, 276 Mich App at 620, which identified "the Legislature's policy decision" behind MCL 768.27a as what *juries* should be allowed to consider by regulating what evidence *courts* may admit.

[19] *Bush v Shabahang*, 484 Mich 156, 166-167; 772 NW2d 272 (2009), citing *Sun Valley Foods Co v Ward,* 460 Mich 230, 236; 596 NW2d 119 (1999).

[20] *United States v Foskey*, 204 US App DC 245, 251; 636 F2d 517 (1980), quoting *United States v Myers*, 550 F2d 1036, 1044 (CA 5, 1977); see also *People v Allen*, 429 Mich 558, 566; 420 NW2d 499 (1988) ("[I]n our system of jurisprudence, we try cases, rather than persons . . . .").

[21] *McDougall*, 461 Mich at 30.

7

It is also noteworthy that the Legislature's placement of MCL 768.27a supports my conclusion that MCL 768.27a is a procedural rule. MCL 768.27a is contained within the Code of Criminal *Procedure*.[22]

The majority correctly observes that the statute "reflects a substantive legislative determination that juries should be privy to a defendant's behavioral history in cases charging the defendant with sexual misconduct against a minor."[23] But this observation only makes my point. This observation is relevant not as a "substantive" basis for the statute. Rather, it is relevant to demonstrate what the Legislature attempted to do by enacting it: to regulate the courts by telling them what evidence juries can hear. The course of action the Legislature prescribes to accomplish its policy goals in MCL 768.27a—telling courts how to operate—is a regulation of the judicial dispatch of litigation. It does nothing more. Simply put, the Legislature cannot "modify . . . the practice and procedure in all courts of this state."[24]

The Washington Supreme Court very recently reached a similar conclusion and invalidated its state's similarly worded statute permitting the admission of propensity evidence in sexual abuse cases.[25] Relying on its inherent power to prescribe rules of

---

[22] See MCL 760.1 ("This act shall be known and may be cited as 'The Code of Criminal Procedure.'"); see also *People v Glass (After Remand)*, 464 Mich 266, 282 n 13; 627 NW2d 261 (2001) ("[T]his Court's authority regarding the rules of practice and procedure derives from Const 1963, art 6, § 5, and is not subservient to the Code of Criminal Procedure.").

[23] *Ante* at 23.

[24] Const 1963, art 6, § 5.

[25] *State v Gresham*, 173 Wash 2d 405; 269 P3d 207 (2012).

8

"procedure and practice," the court reasoned that "admission of evidence in a criminal trial is generally a procedural matter."[26] The court invalidated the statute, all the while recognizing its stated purpose: "'to ensure that juries receive the necessary evidence to reach a just and fair verdict . . . .'"[27]

In another analogous case, the New Hampshire Supreme Court provided the following persuasive analysis:

> Rule 404(b) is a prime example of an internal procedural rule designed to effectuate a constitutional right. . . . Rule 404(b) is simply a procedural means by which the fair trial right is secured. Giving deference to the legislature would, in this instance, abolish the rule's purpose and interfere with the judiciary's sound discretion in determining to what extent the rule serves its function in the circumstances of a particular case.
>
> * * *
>
> Because the proposed bill directly conflicts with Rule 404(b), a rule concerning a uniquely judicial function, the separation of powers doctrine is violated. The legislature has no more right to break down the rules prescribed by this court to assure fundamental due process in criminal and civil trials than the court has to prescribe the mode and manner in which the legislature shall perform its legislative duties.[28]

---

[26] *Id.* at 431.

[27] *Id.* at 425, quoting Wash Rev Code 10.58.090.

[28] *Opinion of the Justices (Prior Sexual Assault Evidence)*, 141 NH 562, 574, 578; 688 A2d 1006 (1997); see also *State v Mallard*, 40 SW3d 473, 483 (Tenn, 2001) ("[T]he legislature can have no constitutional authority to enact rules, either of evidence or otherwise, that strike at the very heart of a court's exercise of judicial power . . . . Among these inherent judicial powers are the powers to hear facts, to decide the issues of fact made by the pleadings, and to decide the questions of law involved. As an essential corollary to these principles, any determination of what evidence is *relevant*, either logically or legally, to a fact at issue in litigation is a power that is entrusted solely to the care and exercise of the judiciary.") (citation omitted).

In sum, when a statute's *only* function is to tell the courts what evidence they may admit in a court proceeding, the statute must give way to a conflicting court rule. MCL 768.27a is such a statute, and it conflicts with MRE 404(b). Accordingly, MCL 768.27a violates Const 1963, art 6, § 5, and this Court should declare it null and void.

My reasoning is not inconsistent with *McDougall*, nor would it restore the holding of *Perin v Peuler (On Rehearing)*[29] that *all* rules of evidence are procedural. Numerous authorities, including some cited by the *McDougall* majority, have identified evidentiary rules that are likely substantive declarations of policy outside the scope of the judiciary's rulemaking power.[30] It is unsurprising that courts and commentators might identify these rules as substantive for reasons I have previously identified. These rules do far more than dictate what evidence is admissible in a court proceeding; they directly affect people's out-of-court behavior.[31]

---

[29] *Perin*, 373 Mich 531.

[30] 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), ch 60, p 403 (referring to the parol evidence rule and the statute of frauds as examples of evidentiary rules that appear to be procedural but are substantive in nature); see also Joiner & Miller, 55 Mich L R at 651 (labeling the doctor-patient privilege as a substantive evidentiary rule).

[31] See Comment, *Rules of evidence: An exercise of constitutional power by the Michigan Supreme Court*, 1980 Det C L R 1062, 1085 (indicating that whether a rule has an effect on in-court or out-of-court behavior is relevant to evaluating whether it is substantive or procedural); see also Baughman, *The emperor's old clothes: A prosecutor's reply to Mr. Leitman concerning exclusion of evidence for statutory violations*, 1999 L R Mich St U Det C L 701, 716 (concluding that "privileges are substantive in nature" in part because "[t]hey seek to control out of court behavior" and the purpose of the rule governing them "is non-adjudicative").

The majority asserts that "as a purely functional matter . . . , all evidentiary rules tell the courts what evidence is admissible."[32] Noting my reference to privileges as possible substantive rules of evidence, the majority proclaims that "rules relating to privilege still serve the exclusive function of telling the courts what evidence is admissible at trial and, therefore, would be procedural under [my] test."[33] Not so. Most rules relating to privileges create a substantive right to confidentiality between parties such as doctors and patients,[34] attorneys and clients,[35] or clergy and penitents.[36] These privileges exist independently from judicial proceedings. They also regulate courts by preserving confidentiality in the courtroom. That these privileges were created to exist outside the courtroom indicates the existence of a "legislative policy reflecting considerations other than judicial dispatch of litigation . . . ."[37] The function of these

---

[32] *Ante* at 25 (emphasis omitted).

[33] *Ante* at 25 (emphasis omitted).

[34] MCL 600.2157.

[35] MCL 767.5a(2).

[36] MCL 600.2156.

[37] For similar reasons, the majority misses the point when it concludes that my approach would result in court rules yielding to statutes that are based on some policy concerns but not others. Nor is it an accurate statement of my position that I believe that "legislative policy concerns are irrelevant." *Ante* at 26. The legislative policy considerations *reflected in a statute's function* are relevant. As noted, the *function* of statutes governing privileges is to create a substantive right of confidentiality between certain individuals. But the majority fails to grasp that a statute's function, the creation of those privileges, is far different from the Legislature's policy reasons *for enacting it*. If the *function* of a statute born of policy concerns about high recidivism rates among sexual offenders of children is substantive, it will be no less valid than the privilege statutes. See, e.g., note 17 of this opinion (identifying statutes altering substantive law that advance the policy

11

statutes is to create a substantive right, with an incidental effect on the admissibility of evidence in a court proceeding.[38]

The majority insists that my analysis would render Michigan's rape-shield statute[39] unconstitutional. It cites a Colorado Supreme Court case holding that that state's rape-shield statute did not violate its state constitution's separation of powers clause.[40] There is a large problem with the majority's attempt to use this case to undermine my analysis. The Colorado Supreme Court specifically noted that its rape-shield statute had a "mixed policy and procedural nature," and upheld it because of the "absence of any conflicting rule adopted by this court . . . ."[41] Thus, the Colorado Supreme Court strongly implied that it might very well have reached the opposite result had there been a conflicting court rule. By contrast, the decisions from the Supreme Courts of Washington, New Hampshire, and Tennessee cited in this opinion are persuasive and directly on point.[42]

---

considerations identified by the majority). Thus, it is entirely sensible that my approach might result in court rules yielding to statutes "grounded in some policy concerns . . . but not others[.]" *Ante* at 26. The policy reasons behind the statute are simply not part of the inquiry.

[38] The majority's response to this argument is to cite a single privilege statute that establishes spousal privilege solely in the context of court proceedings.

[39] MCL 750.520j.

[40] See *ante* at 27 & n 75, citing *People v McKenna*, 196 Colo 367, 371-372; 585 P2d 275 (1978).

[41] *McKenna*, 196 Colo at 373.

[42] The majority's attempt to distinguish *Mallard* and *Opinion of the Justices* is not persuasive. Those decisions were not based solely on the determination that the statutes

12

In sum, MCL 768.27a differs from those rules that create, modify, or eliminate legal rights or duties. It exists *solely* to change the standard for the admission of evidence in a courtroom, a procedural matter solely within the province of the judiciary. For the reasons previously stated, I conclude that MCL 768.27a is a quintessential "procedural" rule involving the "dispatch of judicial business" under *McDougall*. Because it conflicts with MRE 404(b) and regulates a matter of procedure, the Legislature overstepped its constitutional authority under Const 1963, art 6, § 5 by enacting it.[43]

### THE MAJORITY ERRS BY RELYING ON *McDOUGALL* BECAUSE IT IS FUNDMENTALLY FLAWED AND NOT FAITHFUL TO THE AUTHORITIES ON WHICH IT RELIED

Unfortunately, the entire previous discussion regarding the proper application of *McDougall* amounts to much ado about nothing. This is so because, just as in *McDougall*, once any "policy consideration" is identified that supports the statute, our corresponding rule—should it conflict—becomes a nullity.[44]

---

at issue restricted courts' discretion to ascertain the relevancy of evidence. Rather, they also focused on the fact that the statutes at issue would undermine the standards for the admissibility of certain types of evidence set by court rules. This is precisely what MCL 768.27a does. See also Paine, *Significant differences between state and federal evidence law*, 42 Tenn B J 28, 28 (2006) (concluding that Tennessee's version of MCL 768.27a is likely unconstitutional under *Mallard*).

[43] Because I reach this conclusion, I need not address whether MCL 768.27a is an unconstitutional legislative intrusion into the judiciary's authority to exercise "[t]he judicial power of the state" under Const 1963, art 6, § 1.

[44] See *McDougall*, 461 Mich at 62-63 (CAVANAGH, J., dissenting) ("The effect of the majority's decision, however, is to invite the Legislature to trample whatever rules of the judiciary might arguably concern something other than judicial efficiency, and the majority's decision herein offers so little to support its conclusion that the matter discussed today is substantive that it invites legislative 'questions' far more fanciful than the ones above. . . . All the Legislature need do is determine some questions outside the

The majority applies *McDougall* perfunctorily and concludes that MCL 768.27a prevails over MRE 404(b) because it is based on "policy considerations 'over and beyond matters involving the orderly dispatch of judicial business' . . . ."[45] As previously explained, the majority's conclusion is not a foregone one under *McDougall*, nor is it in accord with the bulk of existing authority addressing this issue. Hence, because the majority reaches an incorrect result due to its flawed application of the *McDougall* test, I must address the validity of the *McDougall* test.

I conclude that the *McDougall* test for analyzing whether a statute is substantive or procedural (or, at a minimum, the majority's application of that test) is overly simplistic and underinclusive. Thus, I disagree with the majority's assertion that *McDougall* "established a sensible approach to separate procedural rules of evidence . . . from substantive rules of evidence . . . ."[46] The test should be either refined or discarded because it is not consistent with the historical authority on which it purports to be based.[47]

---

'mere dispatch of judicial business,' and the Court's own regulation of its own judicial function may be cast aside.").

[45] *Ante* at 21-22, quoting *McDougall*, 461 Mich at 31 (citation and quotation marks omitted).

[46] *Ante* at 20-21.

[47] And, it bears repeating, that authority is scant. See *McDougall*, 461 Mich at 56 (CAVANAGH, J., dissenting) (noting that the sole bases for the majority's opinion were "a Court of Appeals opinion of recent vintage and identical authorship as the majority opinion," "a 1957 law review article," and "dicta offered by Justice WILLIAMS in *Kirby* [400 Mich at 598], in a portion of his opinion that failed to garner the allegiance of a majority of the Court").

14

First, the majority's application of *McDougall* is cursory. The majority takes a mere four paragraphs of analysis to support its conclusion that "MCL 768.27a is a valid enactment of substantive law . . . ."[48] That the *McDougall* test allows for such brevity of analysis in resolving this issue is a liability, not an asset. The substance/procedure divide is a far thornier question than the majority's application of *McDougall* acknowledges. Other courts, as well as many commentators, have recognized and readily conceded this tension.[49] Indeed, even the *McDougall* majority acknowledged it.[50] But that prescient acknowledgment dies a quick death at the hands of this majority, given that its substance/procedure analysis begins with shovel in hand and a six-foot-deep hole. Its analysis is as effortless as it is superficial.

Second, the *McDougall* test as applied is also vastly underinclusive in defining what rules qualify as procedural.[51] Nor is it faithful to the authority on which it purports

---

[48] *Ante* at 22.

[49] See, e.g., Joiner & Miller, 55 Mich L R at 635 ("[A] clear-cut distinction [between substance and procedure] for all purposes is impossible of formulation."), citing Riedl, *To what extent may courts under the rule-making power prescribe rules of evidence?*, 26 ABAJ 601, 604 (1940); *Seisinger v Siebel*, 220 Ariz 85, 92-93; 203 P3d 483 (2009) (observing that "the precise dividing line between substance and procedure 'has proven elusive'" and that "[s]tatutes relating to evidence present particularly difficult problems, as such statutes, like rules of evidence, often have both substantive and procedural aspects"); *State v Pavelich*, 153 Wash 379, 383; 279 P 1102 (1929) (noting that "the distinction between procedure and substantive law is not always well understood, and is sometimes vague and indistinct").

[50] *McDougall*, 461 Mich at 36 ("We appreciate the difficulty that attends the drawing of the line between 'practice and procedure' and substantive law.").

[51] See, e.g., Levin & Amsterdam, *Legislative control over judicial rule-making: A problem in constitutional revision*, 107 U Pa L R 1, 23 (1958) ("There is a substantial risk in ceding too much to the legislature, particularly if in so doing courts are to abdicate

15

to be grounded. The language "orderly dispatch of judicial business" and "public policy, having as its basis something other than court administration" seized on in *McDougall* lacks the proper context and is grossly overstated. The authors of the law review article that articulated this language themselves recognized as much.[52] One authority on which the *McDougall* majority relied said that rules of "practice" include those that "prescribe the methodology for initiating, conducting, and concluding litigation . . . ."[53] Another

completely from the exercise of any rule-making authority in the ceded area. The point is illustrated in considering a reformulation of the Riedl test by Joiner and Miller. While asserting that their version 'approximates' Riedl's, Joiner and Miller propose something very different. The question for them is whether a particular area involves 'something more than the orderly dispatch of judicial business.' If it does, then it is not an appropriate subject for treatment by court rule. The difficulty with this position is that it excludes too much."); Lawson, *Modifying the Kentucky rules of evidence—A separation of powers issue*, 88 Ky L J 525, 570 & n 259 (2000) (criticizing a standard almost identical to that adopted by the *McDougall* majority—allowing courts to promulgate certain evidentiary rules as long as "'there is no other policy as established by the state involving matters other than the orderly dispatch of judicial business'"—as "excluding too much of the law from the procedure category" and noting that "many evidence rules have both substantive and procedural elements and that insistence upon procedural purity would unduly restrict judicial rulemaking authority") (citation omitted); Dickey, *The Florida evidence code and the separation of powers doctrine: How to distinguish substance and procedure now that it matters*, 34 Stetson L R 109, 123 (2004) (recognizing as one problem of the *McDougall* test that "treating rules of evidence as procedural only if they relate to court administration seems too narrow").

[52] Levin & Amsterdam, 107 U Pa L R at 23-24 (noting that the "orderly dispatch of judicial business" test, if "[a]pplied rigorously," "would exclude not only such matters as venue and costs, but also such questions as the procedural effect of presumptions. *This is not to suggest that the proponents of the test would so apply it. Indeed, they recognize that theirs is not a formulation which should be expected to answer all questions of rule-making authority.*") (emphasis added), citing Joiner & Miller, 55 Mich L R at 629; see also Joiner & Miller, 55 Mich L R at 653 ("The power of a court to establish rules of practice is very broad indeed.").

[53] Joiner & Miller, 55 Mich L R at 635-636.

authority that the *McDougall* majority cited identified procedural rules as those "based upon policies concerned with the reliability or relevance of proof or the orderly dispatch of judicial business."[54]

The *McDougall* test also ignores that the vast majority of courts and commentators, again *including those relied on by the* McDougall *majority*, have concluded that most rules of evidence are procedural.[55] Thus, the majority's attempt to counter my criticism of the *McDougall* test as "vastly underinclusive" by calling my approach "vastly overinclusive" is unavailing.[56] *McDougall*'s sharply limited "judicial dispatch of business" test, at least as applied, invites the Legislature to supersede most of the Michigan Rules of Evidence. Under *McDougall*, nearly every rule can be characterized as substantive.[57]

Finally, the *McDougall* test gives the Legislature license to intrude with impunity into the province of the judiciary provided that it divines a "substantive" label for its

---

[54] 3 Honigman & Hawkins, ch 60, p 403.

[55] Joiner & Miller, 55 Mich L R at 651 ("Most rules of evidence involve only the orderly dispatch of judicial business and should be subject to court rule."); *Opinion of the Justices*, 141 NH at 570 ("Rules of evidence, in most instances, relate only to practice and procedure."); *State ex rel Collins v Seidel*, 142 Ariz 587, 590; 691 P2d 678 (1984) ("Rules of evidence have generally been regarded as procedural in nature."), citing *Ammerman v Hubbard Broadcasting, Inc*, 89 NM 307, 310; 551 P2d 1354 (1976).

[56] *Ante* at 25.

[57] See also *McDougall*, 461 Mich at 60-62 (CAVANAGH, J., dissenting) (citing many of the Michigan Rules of Evidence that might be said to be based on a "policy judgment" and, consequently, subject to legislative abrogation).

17

statutory enactments.[58]   This is so irrespective of whether that which the statute accomplishes is substantive or procedural.   Surely the delegates involved in crafting article 6, § 5 did not intend to allow the Legislature to neuter this Court's authority to regulate "practice and procedure" in this fashion.

For all these reasons, I conclude that the *McDougall* test for resolving the substance/procedure question is fundamentally flawed.  At a minimum, the majority's mechanical application of it demonstrates how inadequate it is to resolve the difficult questions presented by cases such as this.  I would refine the test in the manner described in this opinion if the test cannot be discarded altogether, because the majority appears unwilling or unable to apply it consistently with its intellectual genesis.[59]

---

[58] See *id*. at 53 n 21 (CAVANAGH, J., dissenting) ("The majority's view effectively allows the Legislature to determine, at its will, what might be substantive, and thus, when it is inclined, to override a judiciary decision with its own preferences. . . .   The majority's approach, however, is so ill-defined as to allow the Legislature to change its cards as it sees fit."); Glicksman, *Separation of powers conflict: Legislative versus judicial roles in evidence law development*, 17 TM Cooley L R 443, 456-457 (2000) ("Should the *McDougall* case ever find uniform application, many of our rules of evidence that contain and reflect policy judgments, such as the hearsay rule, character evidence rules, subsequent repair proofs, impeachment by prior conviction, and compromises of medical payment expenses, could be changed by the legislature by merely suggesting that they are substantive law and remain free targets for change."); *State v Sypult*, 304 Ark 5, 13; 800 SW2d 402 (1990) (Turner, J., concurring) ("[I]t is not sufficient to say simply that we will defer to legislative enactment on all 'matters of public policy'; in fact, all enactments of the General Assembly become matters of 'public policy.'").

[59] See *McDougall*, 461 Mich at 30, citing 3 Honigman & Hawkins, p 404, and Joiner & Miller, 55 Mich L R at 650-651.  As noted in the text and footnotes throughout this opinion, the *McDougall* test (as applied by the majority) is utterly unfaithful to those sources.  Accordingly, it is a test born both of the *McDougall* majority's misapprehension of those sources and its own imagination.

MCL 768.27a AND MRE 403

Because I would strike down MCL 768.27a as unconstitutional, it is unnecessary for me to reach the question of how MCL 768.27a and MRE 403 interact. Other-acts evidence admitted pursuant to MRE 404(b) is indisputably subject to balancing under MRE 403. Thus, I do not reach the issues discussed in parts III(C) and (D) of the majority opinion.

APPLICATION

I would hold that MCL 768.27a is an unconstitutional violation of the separation of powers provision set forth in Const 1963, art 6, § 5. In *Watkins*, the Court of Appeals erroneously concluded that the statute did not violate the separation of powers and that much of the evidence against Watkins had been properly admitted under MCL 768.27a. Therefore, I would reverse the judgment of the Court of Appeals and remand *Watkins* for a new trial. I would direct the trial court to use MRE 404(b) and MRE 403 on remand to evaluate the admissibility of the other-acts evidence.

In *Pullen*, I would affirm the judgment of the Court of Appeals. Although the trial court erred by concluding that the other-acts evidence was admissible under MCL 768.27a, the error was harmless because the court excluded the evidence under MRE 403. "Rule 403 determinations are best left to a contemporaneous assessment of the presentation, credibility, and effect of testimony" by the trial court.[60] In this case, the

---

[60] *People v VanderVliet*, 444 Mich 52, 81; 508 NW2d 114 (1993).

19

trial court's decision to exclude the evidence was within the range of principled outcomes and, therefore, not an abuse of discretion.[61]

The majority identifies four purported flaws in the *Pullen* trial court's application of MRE 403. I disagree with each analysis. With respect to the first two, as previously noted, I would conclude that MCL 768.27a is unconstitutional. Thus, I need not reach the question of whether MRE 403 would apply differently to evidence admitted under the statute rather than under MRE 404(b). Other-acts evidence is admissible only under MRE 404(b), which does not allow its admission to show that a defendant had a propensity to commit the charged offenses.[62] Hence, the other-acts evidence in *Pullen* was not admissible for that purpose.

Because the evidence was not admissible to show propensity, the trial court did not err by "fail[ing] to weigh the propensity inference in favor of the evidence's probative value."[63] Nor was it required to "weigh in favor of the evidence's probative value the extent to which the other-acts evidence supported the victim's credibility and rebutted the defense's attack thereof."[64]

---

[61] *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003) (holding that an abuse of discretion occurs when a trial court chooses an outcome that falls outside the range of principled outcomes).

[62] See MRE 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.").

[63] *Ante* at 39.

[64] *Ante* at 40.

20

Next, I question the majority's criticism that the trial court "lumped" together all the other-acts evidence rather than considering each act separately. Neither the majority nor the prosecution cites any authority to support the proposition that a trial court must consider each other act separately when conducting an MRE 403 analysis.[65] Consequently, I see no basis for concluding that the trial court made a legal error in this respect. For this reason, I believe the majority's decision otherwise violates our often stated rule that "[a]n abuse of discretion involves far more than a difference in judicial opinion."[66]

Finally, the majority remands for further proceedings for the trial court to consider whether evidence of Pullen's previous indecent exposure is admissible under MRE 404(b). I fail to see how the trial court can apply MRE 403 to that evidence differently if it is admitted under MRE 404(b) rather than under MCL 768.27a.[67] Under either avenue

[65] I do not cite authority for my position either. However, it is the majority, in making new law on this point, that bears the burden of providing authority. It attempts to rely on the language of MRE 403, but that reliance is dubious. First, one can just as easily read MRE 403 as providing that "[*all* other-acts] evidence may be excluded if *its* probative value is substantially outweighed by the danger of unfair prejudice . . . ." (Emphasis added.) Second, the majority selectively quotes the rule by omitting all the language preceding "needless presentation of cumulative evidence" to bolster its conclusion that the rule's language supports its conclusion. But the "needless presentation of cumulative evidence" is but *one* basis for finding the evidence excludable.

[66] *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 227; 600 NW2d 638 (1999), citing *Williams v Hofley Mfg Co*, 430 Mich 603, 619; 424 NW2d 278 (1988).

[67] The majority also appears to suggest that the MRE 403 balancing would come out differently because the trial court would evaluate the evidence of the indecent exposure independently of the other-acts evidence. I disagree that reevaluation is necessary because, as previously noted, I do not agree with the majority that the trial court improperly "lumped" together the other-acts evidence.

21

of admissibility, MRE 403 requires exclusion if, among other things, the evidence's "probative value is substantially outweighed by the danger of unfair prejudice . . . ."[68]

On remand, evidence of the prior indecent exposure may be admitted only under MRE 404(b). MRE 404(b) does not allow other-acts evidence to be admitted to show propensity or bad character. Therefore, if anything, the prior-indecent-exposure evidence will have *less* probative value under MRE 404(b) than it did when the trial court evaluated it under MCL 768.27a. Moreover, MRE 403 continues to apply with full force to that evidence. Consequently, there is no basis for concluding that the trial court's MRE 403 balancing would come out differently.

The majority also summarily dismisses the trial court's second stated basis for finding the other-acts evidence unfairly prejudicial to Pullen. After concluding that the other-acts evidence would be "highly probable" to prejudice the jury, the court stated:

> The Court also finds that it would be fundamentally unfair and a violation of due process to force [Pullen] to defend accusations from over 20 years ago for which charges were never filed. [Pullen] is in an untenable position to try to disprove more serious and greatly dated charges. It is unlikely that he would be able to do so, and to require him to do so would be manifestly unjust.

The majority does not explain how this alternative basis for excluding the other-acts evidence also constituted an abuse of discretion. Instead, it suggests that the evidence in the 1989 police report alleging sexual abuse of Pullen's daughter, while "equally prejudicial on this basis," has "varying probative values."[69] How is this relevant?

---

[68] MRE 403.

[69] *Ante* at 43 n 97.

22

Whether the introduction of 20-year-old evidence is "fundamentally unfair" and "manifestly unjust" has nothing to do with its probative value, and everything to do with its prejudicial effect. The trial court's conclusion was inherently a determination that *whatever* the evidence's probative value, it would be outweighed by its prejudicial effect and violate Pullen's rights. Thus, that the evidence may have "varying probative values" does nothing to undermine the trial court's ruling in this context.

Accordingly, I am not convinced that the *Pullen* trial court abused its discretion in conducting its MRE 403 balancing. I would affirm the Court of Appeals' judgment.

## CONCLUSION

I agree with the majority that MCL 768.27a and MRE 404(b) irreconcilably conflict. However, I dissent from the majority's conclusion that MCL 768.27a prevails over MRE 404(b). I would hold that MCL 768.27a is an unconstitutional legislative intrusion into the power of the judiciary. Accordingly, I would vacate the convictions in *Watkins* and remand the case for a new trial. I would affirm the lower court judgments in *Pullen* that excluded the other-acts evidence as substantially more prejudicial than probative under MRE 403.

Marilyn Kelly
Michael F. Cavanagh
Diane M. Hathaway

23