*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

RAYMOND SHAWN-PAUL REECE,

      Defendant-Appellant.

UNPUBLISHED
December 14, 2023

No. 363302
Kent Circuit Court
LC No. 21-011322-FC

Before: FEENEY, P.J., and RICK and HOOD, JJ.

PER CURIAM.

Defendant-appellant, Raymond Shawn-Paul Reece, appeals as of right his jury trial convictions of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b) (sexual penetration involving person under 13 while defendant is 17 or older); and second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (sexual contact involving person under 13). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent sentences of 400 months to 60 years' imprisonment.

On appeal, defendant asserts that the trial court abused its discretion by allowing the admission of several types of evidence at trial: (1) evidence concerning defendant's prior sexual relationship with a 15- or 16-year-old girl, (2) prior acts of domestic violence involving the victim's mother, and (3) an essay written by the victim for school. In addition, defendant asserts that the trial court erred by not allowing the defense to admit medical records that did not support the victim's sexual-abuse claims. We conclude that these claims are without merit and affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

This case arises out of allegations that defendant sexually abused the victim, DW, in 2010 or 2011, when she was seven years old. Defendant was in a relationship with the DW's mother for approximately 16 years. DW disclosed the abuse to her mother in January 2021. Her mother confronted defendant, who was in jail at the time. She did not contact law enforcement. In September 2021, DW wrote an essay for school in which she stated that defendant sexually assaulted her. Her teacher contacted law enforcement.

Following trial, defendant was convicted of one count of CSC-I and one count of CSC-II. This appeal followed.

## I. ANALYSIS

### A. STANDARD OF REVIEW

We review "a trial court's evidentiary decisions for an abuse of discretion." *People v Danto*, 294 Mich App 596, 598-599; 822 NW2d 600 (2011). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Id*. at 599. "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo, and it is an abuse of discretion to admit evidence that is inadmissible as a matter of law." *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014).

### B. PRIOR ACTS OF SEXUAL MISCONDUCT

Defendant first challenges the admission of testimony concerning a sexual relationship that he had with CH when she was 15 or 16 years old. We conclude that the trial court did not abuse its discretion by allowing this testimony.

The trial court concluded that CH's testimony was admissible under MCL 768.27a. MCL 768.27a provides an exception to the general prohibition against propensity evidence. For instance, MRE 404(b) allows evidence of other crimes for nonpropensity purposes, such as to show "motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident . . . ." On the other hand, in pertinent part, MCL 768.27a(1) provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." Evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. In other words, "[b]ecause a defendant's propensity to commit a crime makes it more probable that he committed the charged offense, MCL 768.27a permits the admission of evidence that MRE 404(b) precludes." *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012). However, "evidence admissible pursuant to MCL 768.27a may nonetheless be excluded under MRE 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id*. at 481 (quotation marks and citation omitted).

In this case, CH testified that she had a "consensual" sexual relationship with defendant when she was 15 or 16 years old. She further testified that there was one instance in which defendant had sex with her on the couch after she told him no. Defendant having sex with a 15-year-old child would be a "listed offense" under MCL 768.27a(2)(a) regardless of whether the relationship was consensual. See MCL 28.722(v)(*iv*); MCL 750.520d(1)(a) (stating that a person is guilty of third-degree criminal sexual conduct if the person engages in sexual penetration with

a person who is at least 13 years old but under 16 years old). Moreover, the incident in which CH described defendant sexually penetrating her on the couch against her will would be a listed offense regardless of her age. See MCL 750.520d(1)(b) (stating that a person is guilty of third-degree criminal sexual conduct if the person engages in sexual penetration with another person and force or coercion is used to accomplish the sexual penetration). As a result, instances of sexual conduct involving 15-year-old CH and the nonconsensual act would constitute listed offenses subject to MCL 768.27a.[1]

Evidence concerning defendant's sexual relationship with CH was relevant to defendant's propensity to have sexual relationships with young girls. There was no corroborating evidence in this case. DW disclosed the sexual assaults approximately 10 years after the assaults occurred. There were no witnesses to the assaults, nor was there physical evidence related to the assaults. Therefore, evidence that defendant had a previous sexual relationship with a minor, which included nonconsensual sexual penetration, was relevant because it tended to make DW's uncorroborated testimony more likely.[2]

We do not believe that CH's testimony was overly prejudicial. "[W]hen applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 487. "That is, other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference." *Id*. The Michigan Supreme Court provided the following factors to consider whether other-acts evidence admissible under MCL 768.27a should be excluded under MRE 403:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id*. at 487-488 (citation omitted).]

"This list of considerations is meant to be illustrative rather than exhaustive." *Id*. at 488.

---

[1] MCL 768.27a(1) provides, in pertinent part, that "evidence that the defendant committed another listed offense against a minor is admissible . . . ." MCL 768.27a(2)(b) defines "minor" as "an individual less than 18 years of age." Although 16-year-old CH would have technically been a "minor," the consensual sexual relationship would not have constituted a "listed offense." See MCL 28.722.

[2] Pursuant to MCL 750.520h, "[t]he testimony of a victim need not be corroborated in prosecutions under" MCL 750.520b through MCL 750.520g, which relate to charges of criminal sexual conduct.

In this case, the trial court did not expressly address each of the *Watkins* factors in its ruling that CH's testimony was admissible.[3] Rather, the trial court focused on the similarities between the other acts and the instant charges. According to the trial court, a grown man having intercourse with a seven-year-old child was an incredibility violent act, while CH reported that defendant sexually penetrated her vagina after she told him no several times. She did not tell anyone about the incident because she was afraid. As a result, the court opined that both acts concerned violence against a child involving threatening behavior.

Although the other acts and the charged conduct in this case involved nonconsensual sexual acts with young girls, there were several differences between the two situations. CH was 15 or 16 years old at the time of her interactions with defendant. She testified that—aside from the one instance—her sexual relationship with defendant was consensual. However, she also testified that she felt obligated to have sex with defendant and that she felt that something bad would happen if she did not. Yet, she denied that he ever threatened her. CH was a friend who played cards and hung out with defendant and DW's mother. CH stated that the sexual relationship lasted for over a year. She said that DW was three or four years old at the time. She ended the relationship because she felt guilty and stopped having contact with either DW's mother or defendant. She did not disclose the relationship because she did not think that anyone would believe her.

On the other hand, DW alleged that defendant sexually assaulted her when she was seven years old, which would have been three or four years after defendant's relationship with CH. Defendant acted as a stepfather to DW, although it does not appear that he and DW's mother ever married. The assaults occurred when DW's mother was at work. The assaults stopped when defendant was incarcerated when DW was eight or nine years old. He later moved back in with the family, but there were no more assaults. DW's mother's work hours had changed. DW did not disclose the abuse because defendant threatened to hurt her family members.

Ultimately, even though there were dissimilarities between the other-acts involving CH and the charged offenses, we do not believe that the trial court abused its discretion by deciding that the probative value of the other-acts evidence was not substantially outweighed by its prejudicial effect. Unfair prejudice may exist when "there is a tendency that the evidence will be given undue or preemptive weight by the jury" or when "it would be inequitable to allow use of the evidence." *People v Cowhy*, 330 Mich App 452, 468; 948 NW2d 632 (2019) (quotation marks and citation omitted). Although CH's testimony was damaging to defendant's case, it ultimately bears on DW's credibility. Accordingly, defendant has not established that this evidence should have been excluded under MRE 403.[4]

---

[3] "The list of considerations in *Watkins* provides a tool to facilitate, not a standard to supplant, this proper MRE 403 analysis, and it remains the court's responsibility to carry out such an analysis in determining whether to exclude MCL 768.27a evidence under that rule." *People v Uribe*, 499 Mich 921, 922 (2016) (quotation marks and citation omitted). Although *Uribe* is a Michigan Supreme Court order, such orders constitute binding precedent if the decision includes an understandable rationale. *People v Giovannini*, 271 Mich App 409, 414; 722 NW2d 237 (2006).

[4] We will address the jury instructions concerning the other-acts evidence in the next section.

## C. DOMESTIC VIOLENCE

Next, defendant asserts that the trial court erred by allowing testimony concerning domestic violence that he allegedly perpetrated against DW's mother. We disagree that the court erred.

The trial court allowed testimony concerning domestic violence as other-acts evidence not offered to prove character under MRE 404(b). According to MRE 404(b)(1),

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

In *People v Vandervliet*, 444 Mich 52, 74; 508 NW2d 114 (1993), the Michigan Supreme Court articulated the following requirements for other-acts evidence to be admitted pursuant to MRE 404(b): (1) the evidence must be offered for a proper purpose; (2) the evidence is relevant; (3) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and (4) the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted. "Relevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence." *People v Crawford*, 458 Mich 367, 387; 582 NW2d 785 (1998). "Materiality is the requirement that the other-acts evidence be related to any fact that is of consequence to the action." *People v Denson*, 500 Mich 385, 401; 902 NW2d 306 (2017) (quotation marks and citation omitted).

The evidence related to domestic violence was not presented to prove that, because defendant was physically violent toward DW's mother, he must have sexually assaulted seven-year-old DW. Instead, testimony concerning domestic violence provided background information for the family dynamic and time line. DW explained that life in the home was hectic because of fighting between defendant and her mother, which included physical abuse. She further stated that she did not disclose the abuse because defendant threatened that he would hurt her mother, her biological father, or her siblings. DW believed his threats because she witnessed defendant physically abuse her mother. DW testified that the abuse stopped after defendant was incarcerated, presumably as a result of a domestic-violence incident involving DW's mother. Defendant and DW's mother later reconciled after he was released and he moved back in with the family. The abuse did not continue. The testimony also indicated that DW later moved in with her father because of domestic-violence issues. Moreover, evidence at trial showed that DW's mother confronted defendant after DW disclosed the abuse in January 2021. He was in jail at the time. DW's mother stated that she felt powerless because defendant was released from jail the following day.

As a result, evidence related to domestic violence perpetrated by defendant was relevant to show when and why the abuse ceased, DW's fear of defendant, and the timing of defendant's

absence and presence in the home. On appeal, defendant argues that DW's reasons for delaying her disclosure were not relevant because the defense did not argue that she should not be believed for that reason. However, Michigan courts allow expert testimony concerning "typical symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an abuse victim *or* to rebut an attack on the victim's credibility." *People v Peterson*, 450 Mich 349, 373; 537 NW2d 857 (1995). Therefore, DW's testimony about why she was afraid to tell anyone about the abuse was permissible absent a specific attack by the defense.

Further, the evidence related to domestic violence was not overly prejudicial. Aside from DW stating that defendant attempted to stab her mother in one incident and DW's mother making a vague reference to "felonious assault," the witnesses did not specifically describe any of the instances of domestic violence. Rather, the testimony showed generally that domestic violence occurred in the household and that violence affected members of the household in ways relevant to the instant case. Accordingly, the trial court did not abuse its discretion by allowing testimony concerning domestic violence. See *Vandervliet*, 444 Mich at 74.

Finally, the trial court provided the jury with the following jury instructions:

> The prosecution has introduced evidence of claimed acts of sexual misconduct by the defendant with a minor for which he is not on trial.

> Before you may consider such alleged acts as alleged against the defendant, you must first find the defendant actually committed those acts. If you find the defendant did commit those acts, you may consider them in deciding if the defendant committed the offenses for which he is now on trial. You must not convict the defendant here solely because you think he's guilty of other bad conduct. The evidence must convince you—must convince you beyond a reasonable doubt that the defendant committed the alleged crime, or you must find him not guilty.

> The prosecution has introduced evidence of claimed acts of domestic violence by the defendant against [DW's mother]. He is not on trial for domestic violence. Before you may consider such allegations as evidence against the defendant, you must first find that the defendant actually committed those acts.

> If you find that the defendant did commit acts of domestic violence against [DW's mother], you may only consider them for the limited purpose as to what bearing the evidence may have in explaining why [DW] may not have disclosed the alleged sexual assaults at the time or shortly after they happened.

> You must in the convict [sic—not?[5]] the defendant here because you think he committed acts of domestic violence or because you conclude that he is a bad person. The evidence must convince you beyond a reasonable doubt that the

---

[5] The written jury instructions in the lower court record used "not" rather than "in the".

-6-

defendant committed the alleged crime for which he is now on trial or you must find him not guilty.

"Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Chapo*, 282 Mich App 360, 370; 770 NW2d 68 (2009); see also *Weeks v Angelone*, 528 US 225, 234; 120 S Ct 727; 145 L Ed 2d 727 (2000). As a result, defendant has not shown that admission of testimony concerning sexual misconduct involving CH or domestic violence constituted error requiring reversal.

## D. ESSAY

Defendant also asserts that DW's school essay—which was the catalyst to the criminal investigation—was inadmissible hearsay. We disagree that the trial court erred by admitting the essay.

Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "Evidence that is properly authenticated may nonetheless be inadmissible hearsay if it contains out-of-court statements, written or oral, that are offered for the truth of the matter asserted and do not fall under any exception to the hearsay rule." *People v Smith*, 336 Mich App 79, 110; 969 NW2d 548 (2021) (quotation marks and citation omitted).

In this case, the trial court ruled that the essay was not hearsay because it was not offered to prove that defendant sexually assaulted DW. Rather, the essay was admitted to explain why she waited so long to disclose. Evidence concerning the essay was relevant to explain how law enforcement became involved in the case. However, the actual contents of the essay had limited relevance because it was about DW's mother and her disclosure to her mother. In any event, even if the essay amounted to inadmissible hearsay, it was cumulative to testimony provided by DW and her mother. Before reading the essay, DW testified about the sexual assaults and that she disclosed to her mother in the winter or spring of 2021, which was before she wrote the essay. DW's mother later testified that DW disclosed the abuse to her in January 2021. The defense did not object to this testimony or argue on appeal that it was improper. Therefore, the essay was cumulative to other evidence that was properly admitted. See *id*. at 116. Accordingly, even if the contents of the essay were improperly admitted, the erroneous admission was ultimately harmless. See *id*.

## E. MEDICAL RECORDS

Defendant also argues that the trial court erred by not allowing the admission of medical records that did not support the DW's allegations. We disagree that the court erred.

The issue concerning medical records was briefly addressed with the other evidentiary issues before trial. The trial court agreed to review certain records to decide which records might be relevant. Other than to reiterate that the court was taking the matter under advisement, the issue was not ever mentioned on the record again.

Defendant does not provide any further information concerning the medical records. Defendant does not identify which medical records should have been admitted or explain how the

admission of those records would have resulted in a different outcome in this case. As a result, this claim is abandoned.

> It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position . . . . [*People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001).]

"Failure to brief a question on appeal is tantamount to abandoning it." *Id*. Accordingly, we decline to address this abandoned claim.

## F. CUMULATIVE ERROR

Finally, defendant argues that a combination of the evidentiary errors in this case seriously prejudiced him and denied him a fair trial.

"The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).

Defendant has not established that the admission of any of the challenged evidence was in error. "Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *Id*. Accordingly, defendant has not established that he was denied his right to a fair trial.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Michelle M. Rick
/s/ Noah P. Hood

-8-