*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

CARLOS ALMANZA,

      Defendant-Appellant.

UNPUBLISHED
January 25, 2024

No. 362733
Muskegon Circuit Court
LC No. 2021-002662-FC

Before: M. J. KELLY, P.J., and MARKEY and CAMERON, JJ.

PER CURIAM.

Defendant, Carlos Almanza, appeals by right his jury conviction of one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c. Almanza was sentenced to serve 30 months to 15 years in prison for the CSC-II conviction. For the reasons explained in this opinion, we affirm.

## I. BASIC FACTS

Almanza's conviction arises from his sexual assault of HT, his granddaughter. HT disclosed to her mother (Almanza's daughter) that she had been sexually abused by Almanza, and Almanza was subsequently arrested. Prior to trial, the prosecution filed a notice of intent to introduce other-acts evidence under MCL 768.27a and MRE 404(b). Following a hearing, the trial court admitted evidence that Almanza had sexually abused HT on multiple occasions in Ohio and Florida by masturbating in her presence and by touching her mouth and hands with his penis.

At trial, HT testified to multiple instances of sexual abuse. She described an incident where Almanza pulled down the bottom half of her swimming suit and inserted his penis between her "butt cheeks." She also recounted another incident when she fell asleep on the couch at Almanza's house. She stated that Almanza rubbed his penis around her hands and mouth and that he ejaculated on her while she was sleeping. She discovered the abuse when she woke up. Almanza was pulling up his pants, and she discovered a dry, glue-like substance around her hands and mouth. HT testified that, while on a trip in Ohio, she would wake up every morning with Almanza touching her under her clothes and putting his fingers into her vagina. He did the same during a trip to Florida. She testified that every time that she visited Almanza he would grab her breasts

-1-

with his hands under her clothes. HT added that she had lost count of how many times that Almanza penetrated her vagina with his fingers. She also testified that if she was communicating with Almanza over her tablet, he would ask her to show parts of her body, including her breasts. She did so sometimes, but eventually she stopped completely, which angered Almanza. HT eventually disclosed the abuse to her mother because she did not want Almanza to harm anyone else.

HT's mother corroborated parts of HT's testimony, including that Almanza would visit her and the children at their house, that the children would visit Almanza at his house during the summer, that HT would frequently talk with Almanza using her tablet, and that the trips to Ohio and Florida had occurred. She also corroborated HT's testimony regarding the sleeping arrangements on the trips to Ohio and Florida. HT's brother testified similarly. He recalled, additionally, that while playing, HT would tell Almanza not to touch her. He also stated that during the Florida trip, Almanza insisted that HT sleep with him.

Almanza denied abusing HT and said that he had no idea why HT made the allegations. He stated that he spoiled HT because she was very outgoing and easy to get close to. He testified that he remembered the Ohio trip and the sleeping arrangements during that trip. He indicated that the hotel beds were too small to have him and HT's brother sleep together. He also said that, whenever he slept with HT, he had a sheet between them. As for the Florida trip, Almanza said that HT really wanted to sleep with her mother and that he agreed to it because he needed his rest. With regard to HT's brother's statement that Almanza insisted that HT sleep with him, Almanza admitted that this was true, but he stated that his insistence was a matter of personal convenience, given the small size of the beds and the fact that HT was the smallest person on the trip.

## II. JURY SELECTION

### A. STANDARD OF REVIEW

Almanza argues that the lack of persons of color in the jury pool violated his due-process rights. Whether a defendant has been denied his or her Sixth Amendment right to an impartial jury drawn from a "fair cross section of the community" is reviewed de novo. *People v Bryant*, 491 Mich 575, 595; 822 NW2d 124 (2012).

### B. ANALYSIS

"A defendant has the right to be tried by an impartial jury drawn from a fair cross section of the community." *People v Jackson (On Remand)*, 313 Mich App 409, 428; 884 NW2d 297 (2015). "[T]o make a prima facie case of a violation of the Sixth Amendment's fair-cross-section requirement," a defendant must prove the following:

"(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." [*Bryant*, 491 Mich at 597, quoting *Duren v Missouri*, 439 US 357, 364; 99 S Ct 664; 58 L Ed 2d 579 (1979).]

-2-

Here, Almanza satisfied the first prong because Hispanic and Black people are considered a distinctive ground with regard to the *Duren* test. See *People v Hubbard*, 217 Mich App 459, 473-474, 479; 552 NW2d 493 (1996), overruled not in relevant part by *Bryant*, 491 Mich at 618. He has not, however, established the second and third prongs.

With regard to the second prong, our Supreme Court has adopted several tests for us to utilize when examining whether the representation of a distinctive group in a jury pool was fair and reasonable. These tests include the absolute disparity test, the comparative disparity test, the standard deviation test, and the disparity-of-risk test. *Bryant*, 491 Mich at 603-615. However, because Almanza failed to supply reliable statistics with regard to any distinctive group, we cannot apply these tests to our analysis of his claim. Consequently, Almanza has failed to establish that the underrepresentation of persons of color in the jury pool was not fair or reasonable.

Furthermore, Almanza cannot show that the underrepresentation of "persons of color" was due to a systematic exclusion of Black or Hispanic people from the jury-selection process. A systematic exclusion is one that is "inherent in the particular jury selection process utilized." *Id*. at 615-616. For purposes of the third *Duren* prong, intent is an irrelevant factor. *Id*. at 616. The Court recognized that the underrepresentation in *Bryant* was the result of a computer programming error that randomly selected potential jurors from the Secretary of State's database. *Id*. That list "disproportionately included more individuals in certain zip codes and fewer from other zip codes. The underrepresented zip codes on the whole had higher concentrations of African-Americans." *Id*. Therefore, the Court concluded that the error, although unintentional, was inherent in the program and systematic. *Id*.

In a perfect world, Almanza would be correct that a mixed population, in which 20% of the people are nonwhite, should produce jury pools with similar ethnic proportions. In such a diverse community, a jury pool of 57 people with only one Black person may be cause for some concern. However, both the United States Supreme Court and the Michigan Supreme Court have indicated that a single instance of ethnic underrepresentation does not establish systematic exclusion of distinctive groups from a county's jury-selection process. See *Duren*, 439 US at 366; *Bryant*, 491 Mich at 600. Even so, systematic exclusion can be established through multiple instances of underrepresentation or some technical flaw in the system. *Duren*, 439 US at 366; *Bryant*, 491 Mich at 616. Here, Almanza's lawyer failed to supply any additional instances of an underrepresentation of any distinctive group in Muskegon County other than that which occurred in this case. Also, Almanza did not identify any technical error in Muskegon County's jury-selection system that might establish systematic discrimination against a distinctive group. See *Bryant*, 491 Mich at 616. Therefore, Almanza has failed to show that the underrepresentation of persons of color in this trial represented a systematic exclusion of any distinctive group.

Almanza requested a remand for an evidentiary hearing where the trial court could determine whether the jury-selection process for Muskegon County systematically excludes Black or Hispanic people. However, Almanza's request is not properly before this Court because it should have been presented in a separate motion and not in his brief on appeal. See MCR 7.211(C)(1)(a); *People v Bass*, 317 Mich App 241, 276 n 12; 893 NW2d 140 (2016) ("[T]o the extent that defendant now requests that his Court remand this matter for a *Ginther* hearing to permit him to substantiate his claims of ineffective assistance, his request for such relief is improperly made; it appears in the text of his Standard 4 brief, not in a proper motion to remand

-3-

under MCR 7.211(C)(1).").  Also, Almanza did not furnish an offer of proof or affidavit stating "the facts to be established at a hearing."  See MCR 7.211(C)(1)(a).

## III.  OTHER-ACTS EVIDENCE

### A.  STANDARD OF REVIEW

Almanza argues that the trial court violated his due-process rights by allowing the prosecution to introduce separate, out-of-state allegations of sexual conduct into evidence.  He argues that the evidence should have been excluded under MRE 403's balancing test.  We review for an abuse of discretion a trial court's decision concerning the admission of evidence.  *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012).  "A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes."  *Id*.

### B.  ANALYSIS

In cases of sexual offenses against a minor, a party may introduce evidence that the defendant engaged in additional, similar offenses, and this evidence may be "considered for its bearing on any matter to which it is relevant."  MCL 768.27a(1).[1]  The Legislature enacted MCL 768.27a "to address a substantive concern about the protection of children and the prosecution of persons who perpetrate certain enumerated crimes against children and are more likely than others to reoffend."  *Watkins*, 491 Mich at 476.  And, although MRE 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," MCL 768.27a supersedes MRE 404(b).  *Watkins*, 491 Mich at 476-477.  Nevertheless, evidence admitted under MCL 768.27a is subject to exclusion under MRE 403's balancing test.  *Watkins*, 491 Mich at 481.

Under MRE 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Regardless, a trial court may not exclude evidence under MRE 403 simply because the statute allows a jury to draw a propensity inference.  *Watkins*, 491 Mich at 487.  To determine whether it should exclude evidence under MRE 403 that would otherwise be admissible under MCL 768.27a, a court may consider the following, nonexhaustive list of factors:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony.  [*Watkins*, 491 Mich at 487-488.]

---

[1] In his appellate brief, defendant argues that MCL 768.27a is unconstitutional.  However, this Court has ruled that MCL 768.27a does not violate due process.  *People v Muniz*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355977); slip op at 10.

Courts may also consider whether the other incident or allegations resulted in charges or convictions against the defendant. *Id.* at 488. When applying MRE 403 to evidence admitted under MCL 768.27a, "courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Id.* at 487.

"Evidence is not unfairly prejudicial under MRE 403 merely because it damages a party's case." *People v Buie*, 298 Mich App 50, 73; 825 NW2d 361 (2012). Further, in cases that involve the sexual abuse of a minor, a prosecutor may introduce prior uncharged acts of sexual abuse that occurred under similar circumstances to the abuse at issue. *People v Duenaz*, 306 Mich App 85; 854 NW2d 531 (2014).

HT's prior acts testimony in this case constituted admissible evidence, notwithstanding the evidence's prejudicial nature. The other-acts allegations against Almanza closely mirror the circumstances surrounding the sexual abuse at issue in this case. HT testified that, during the Ohio vacation, she woke up every morning to Almanza grabbing her breasts with his bare hand, reaching under her clothes, and digitally penetrating her vagina. She also testified that Almanza digitally penetrated her vagina during the Florida trip. She described additionally occasions during which Almanza would penetrate her butt cheeks with his penis, ejaculate on her, and digitally penetrate her vagina.

When the trial court considered the evidence's probative value, it noted that HT was victim of both the charged act and the prior acts. It further recognized the temporal proximity between the events, with all acts occurring during Almanza's two-year period of abuse against HT. Finally, the court found that the evidence's probative value was increased given that HT's mother and brother could corroborate innocuous details of the Ohio and Florida trips, including the sleeping arrangements. Indeed, the fact that the present and prior offense concerned the same child establishes, not merely that Almanza has a propensity to harm minor girls, but also that he has a propensity to harm his own granddaughter. A propensity purpose is justifiable in cases involving the sexual abuse of minors. See *Buie*, 298 Mich App at 55, 70, 73. Moreover, Almanza's prior sexual abuses involved instances of inappropriate touching identical with those that occurred on the Florida and Ohio trips. In sum, the evidence's probative value was very high.

It is indisputable that evidence that Almanza repeatedly sexually abused his granddaughter would be prejudicial. However, given the substantial probative value of the evidence, we conclude that the trial court did not abuse its discretion by finding—albeit without directly stating that it was applying 403's balancing test[2]—that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

---

[2] Almanza complains that the trial court did not consider exclusion under MRE 403. As we have already stated, the trial court considered that the victim of the charged act and the other-acts was the same person, the temporal proximity between the events, and the fact that HT's mother and brother could give some support to her testimony concerning the Ohio and Florida trips. These considerations encompass three of the factors supplied by the Michigan Supreme Court in *Watkins* 491 Mich at 487-488: "(1) the dissimilarity between the other acts and the charged crime, (2) the

Affirmed.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Thomas C. Cameron

_____

temporal proximity of the other acts to the charged crime, . . . [and] (5) the lack of reliability of the evidence supporting the occurrence of the other acts . . . ." Regarding the fifth factor, the trial court considered the value of the mother and brother's testimony to HT's other-acts testimony. Thus, it properly applied the balancing test.